T.C. Memo. 2003-100

UNITED STATES TAX COURT

MICHAEL THOMAS PRASIL AND LORI LYNN PRASIL, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3945-02.                 Filed April 9, 2003.

Michael Thomas Prasil and Lori Lynn Prasil, pro sese.

Kathryn F. Patteron and Douglas R. Fortney, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

ARMEN, Special Trial Judge:  This case was heard pursuant to
the provisions of section 7443A(b)(3)[1] and Rules 180, 181, and
182 of the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioners'

_____

[1] Unless otherwise indicated, all subsequent section
references are to the Internal Revenue Code in effect for 1999,
the taxable year in issue.

(hereinafter referred to individually as Mr. and Mrs. Prasil)
Federal income tax for the taxable year 1999 in the amount of
$2,183.

After concessions by the parties,[2] the issue for decision is
whether a $7,650 payment that Mrs. Prasil received in 1999 in
settlement of a claim against her former employer is excludable
from petitioners' gross income under section 104(a)(2).  We hold
that it is not.

## FINDINGS OF FACT

Some of the facts were stipulated, and they are so found.
Petitioners resided in Iowa Park, Texas, at the time that the
petition was filed with the Court.

For a few months ending in early 1995, Mrs. Prasil worked
for Heartland Realty Investors, Inc. (Heartland) in Rochester,
Minnesota.  Mrs. Prasil's boss was an individual by the name of
Gary Lakner (Mr. Lakner).  Mrs. Prasil alleged that during her
brief tenure at Heartland, Heartland and Mr. Lakner subjected her
to sex discrimination and harassment.  The record does not
disclose the nature of the alleged sex discrimination that she
experienced.

---

[2] Petitioners concede that they failed to report: (1)
Interest income, (2) pension and annuity income, and (3)
additional tax under sec. 72(t) on a premature distribution from
a qualified retirement plan.  Respondent concedes that
petitioners are not liable for self-employment tax under sec.
1401, and hence they are not entitled to a self-employment tax
deduction under sec. 164(f).

Mrs. Prasil terminated her employment with Heartland in January 1995.

When Mrs. Prasil commenced employment at Heartland, she had been suffering from a clinical condition called "Sweet's syndrome"[3] for a time period not disclosed by the record.  The record does not definitively reveal the extent of Mrs. Prasil's symptoms before, during, and after her employment with Heartland. At trial, however, Mrs. Prasil testified as follows:

> I got very ill.  I had something called Sweet's syndrome.  And things that would happen to me made me much worse.

> *    *    *    *    *    *    *

> Because of my condition and what this man put me through, my physical illness I had got a lot worse. And I ended up being in the hospital and different things because of it.

> *    *    *    *    *    *    *

> They thought I had leukemia, too.  And that's what was causing the Sweet's syndrome.  They thought it was a big rash everywhere.  And fever.  I was really ill.  I couldn't walk on my legs and stuff.

Mr. Prasil further testified that Sweet's syndrome attacks the muscles and that Mrs. Prasil was "in the hospital for about a little over a week" and that they incurred about "$8,000-9,000 in hospital bills that she got from the abuse that she took from

---

[3]  Originally reported by Robert Sweet in 1964, "Sweet's syndrome" (a.k.a. acute febrile neutrophilic dermatosis) is a rare skin disease characterized by fever and painful nodules occurring on the extremities, face, and neck, and may have accompanying myalgia, arthralgias, and arthritis.

this man down at work."  The nature of the alleged abuse inflicted on Mrs. Prasil and the precise reason for her hospitalization are not in the record.

Sometime in late 1995, Mrs. Prasil filed a complaint in the Olmstead County District Court of Minnesota against Heartland and Mr. Lakner (hereinafter referred to collectively as Heartland/Lakner) "asserting claims of sex and reprisal discrimination in violation of the Minnesota Human Rights Act, violations of the Minnesota Whistleblower Act, Minn. Stat. §181.932, and aiding and abetting discrimination in violation of the Minnesota Human Rights Act against Lakner" (Heartland/Lakner lawsuit).[4]  Petitioners did not present a copy of the complaint to the Court.  Mrs. Prasil testified at trial, however, that she sought recovery of an unspecified sum for monetary damages including emotional and physical damages.

During the pendency of the Heartland/Lakner lawsuit, petitioners filed on May 16, 1997, a voluntary petition for bankruptcy under chapter 7 of title 11 of the U.S. Code (Bankruptcy Code) with the U.S. Bankruptcy Court for the District of Minnesota (bankruptcy court).  On petitioners' "Schedule B -

---

[4]  Generally, rights of action under the Minn. Human Rights Act, Minn. Stat. Ann. ch. 363 (West 1991), and the Minn. Whistleblower Act, Minn. Stat. Ann. sec. 181.932 (West 1991), may be awarded compensatory and punitive damages and damages for mental anguish or suffering.  Minn. Stat. Ann. sec. 363.071, subd. 2 (West 1991).

list of personal property" filed with the bankruptcy court, they "identified the [Heartland/Lakner] lawsuit in progress as an asset of unknown value". On August 20, 1997, the bankruptcy court granted petitioners a discharge. The bankruptcy court eventually closed petitioners' bankruptcy case on September 9, 1999.[5]

During petitioners' bankruptcy proceedings, the bankruptcy court approved, by order dated October 14, 1997, the sale of the bankruptcy estate's interest in the Heartland/Lakner lawsuit to Heartland for $5,500. The bankruptcy court also identified $7,650 as "Mrs. Prasil's remaining interest in the lawsuit, the portion of the lawsuit exempt from bankruptcy". Mrs. Prasil testified that Heartland, however, did not pay her the specified amount. Therefore, in January 1999, Mrs. Prasil went back to District Court in Minnesota to get her exemption value of the Heartland/Lakner lawsuit from Heartland. The District Court purportedly ordered Heartland to pay Mrs. Prasil the $7,650 identified by the bankruptcy court as her exempt portion of the Heartland/Lakner lawsuit. Petitioners did not present a copy of the complaint nor the District Court's purported order to the Court.

---

[5] Petitioners did not present to the Court any of the bankruptcy documents or orders, except for the bankruptcy court's docket sheet and only the first page of a document entitled "Memorandum of Law in Opposition to Objection to Settlement".

At the same time of the District Court's order, Mrs. Prasil settled her sex discrimination claim against Heartland for $7,650. Between January 30, 1999, and February 5, 1999, Mrs. Prasil and Heartland memorialized this settlement by executing a document entitled "Settlement Agreement and Release" (settlement agreement) wherein the parties agreed, in part, as follows:

1. <u>Consideration</u>. In exchange for the release set forth herein, Heartland will pay to Prasil the sum of $7650 (Seven thousand, six hundred and fifty dollars).

2. <u>Release of Claims</u>. In consideration of the obligations of Heartland contained herein, Prasil does hereby fully and completely release and waive any and all claims, complaints, causes of action or demands of whatever kind which she now has or may have against Lakner or Heartland * * * arising out of any actions, conduct, decisions, behavior or events occurring up to or on the date of her signature on this Agreement. BY THIS RELEASE, PRASIL GIVES UP ANY RIGHT TO MAKE OR CONTINUE TO PURSUE A CLAIM, BRING OR MAINTAIN A LAWSUIT, FILE AN ADMINISTRATIVE CHARGE OF DISCRIMINATION, OR OTHERWISE SEEK MONEY DAMAGES OR COURT ORDERS AS A RESULT OF HER EMPLOYMENT BY HEARTLAND OR HER SEPARATION FROM EMPLOYMENT WITH HEARTLAND.

Prasil understands and accepts that this release specifically covers but is not limited to any and all claims, complaints, causes of action or demands which she has or may have against Lakner or Heartland relating to her employment and her separation from employment with Heartland whether based on statutory or common law claims (including age, sex, religion, race, national origin, disability or other discrimination arising under the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, the Minnesota Human Rights Act, the Minnesota Whistleblower statute, and any other federal, state, or local statute, Executive Order or ordinance prohibiting employment discrimination), wrongful discharge, breach of contract, breach of any express or implied promise, misrepresentation, fraud, retaliation, breach of public policy, infliction of emotional distress, intentional

> interference with contract, negligence, defamation, promissory estoppel, invasion of privacy, or any other theory, whether legal or equitable.

The settlement agreement did not allocate the $7,650 settlement payment among Mrs. Prasil's causes of action or between monetary damages, emotional damages, and physical damages.

Pursuant to the settlement agreement, Mrs. Prasil received a transmittal letter dated February 12, 1999, from Heartland's attorney enclosing a copy of the fully executed settlement agreement and a settlement check from Heartland dated February 10, 1999, in the amount of $7,650. Petitioners deposited the settlement check in their checking account. Subsequently, Heartland issued a Form 1099-MISC, Miscellaneous Income (Form 1099), reporting "nonemployee compensation" of $7,650 paid to Mrs. Prasil in 1999. At trial, petitioners testified that they did not receive the Form 1099-MISC, but they acknowledged receipt of the $7,650 settlement payment from Heartland in 1999.

Petitioners timely filed a joint Form 1040, U.S. Individual Income Tax Return, for 1999 using the cash basis method of accounting. In that return, petitioners excluded from gross income the $7,650 settlement payment that Mrs. Prasil received from Heartland.

On December 12, 2001, respondent issued a notice of deficiency for 1999 to petitioners. In the notice of deficiency, respondent determined, inter alia, that petitioners failed to

report taxable nonemployee compensation of $7,650, which was reported by Heartland on Form 1099.

### OPINION[6]

Petitioners do not dispute receiving the $7,650 settlement payment from Heartland in 1999 to settle Mrs. Prasil's sex discrimination claim against Heartland. Petitioners contend, however, that the $7,650 settlement payment is not taxable because it "was the amount exempted in our bankruptcy for my discrimination lawsuit". In the alternative, petitioners contend that respondent failed to file a proof of claim in their bankruptcy proceeding. Petitioners' contentions are misplaced.

The issue presented in the present case concerns an action for redetermination of a deficiency for the taxable year 1999,[7] which is a postbankruptcy Federal tax liability, and not the

---

[6] Sec. 7491 does not apply in this case to shift the burden of proof to respondent because petitioners neither alleged that sec. 7491 was applicable nor established that they fully complied with the requirements of sec. 7491(a)(2).

[7] Sec. 451(a) requires income to be included in the taxpayer's gross income in the taxable year of receipt unless the taxpayer's accounting method would properly assign the income to a different taxable period. For cash basis taxpayers, payments received in settlements of lawsuits are included in income in the year in which the payments are received unless otherwise excludable. Sec. 451(a); Oates v. Commissioner, 18 T.C. 570, 584-585 (1952), affd. 207 F.2d 711 (7th Cir. 1953); Amend v. Commissioner, 13 T.C. 178, 185 (1949); secs. 1.446-1(c)(1)(i), 1.451-1(a), Income Tax Regs. In the present case, petitioners are cash basis taxpayers who received a settlement payment in 1999. Thus, the issue concerns petitioners' taxable year 1999.

collection of a prebankruptcy Federal tax liability.[8]  Therefore, the issue before us is a question of petitioners' Federal income tax liability under the Internal Revenue Code, Title 26, United States Code, and not a question under the Bankruptcy Code, Title 11, U.S. Code.

Respondent argues that the $7,650 settlement payment is includable in petitioners' gross income for 1999.  For the reasons stated below, we agree.

Section 61(a) provides that "gross income means all income from whatever source derived" except as otherwise provided.  The definition of gross income is broad in scope, Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 429-30 (1955), and exclusions from gross income are narrowly construed, United States v. Burke, 504 U.S. 229, 248 (1992) (Souter, J., concurring in judgment); Commissioner v. Jacobson, 336 U.S. 28, 49 (1949).

As relevant to the present case, section 104(a)(2) excludes from gross income "the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal

---

[8]  See Swanson v. Commissioner, 65 T.C. 1180, 1184 (1976), where this Court observed that an action brought for redetermination of a deficiency "has nothing to do with collection of the tax nor any similarity to an action for collection of a debt".

physical injuries or physical sickness".[9]  The term "damages received" means an amount received "through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution."  Sec. 1.104-1(c), Income Tax Regs.  Section 104(a) further provides that "emotional distress shall not be treated as a physical injury or physical sickness" for purposes of section 104(a)(2) (except for damages not in excess of the amount paid for medical care attributable to emotional distress).  According to the legislative history of section 104(a)(2), "[T]he term emotional distress includes symptoms (e.g., insomnia, headaches, stomach disorders) which may result from such emotional distress."  H. Conf. Rept. 104-737, at 301 n.56 (1996), 1996-3 C.B. 741, 1041 n.56.

Generally, damages are excludable from gross income if they satisfy two requirements.[10]  The Supreme Court in Commissioner v.

_____

[9]  The Small Business Job Protection Act of 1996, Pub. L. 104-188, sec. 1605, 110 Stat. 1838 (1996 amendment), amended sec. 104(a)(2) to narrow the exclusion for personal injury damages received pursuant to a judgment or settlement, effective for amounts received after Aug. 20, 1996.  Under the 1996 amendment, personal injury or sickness must be physical in nature. Moreover, the amendment explicitly excepts punitive damages from the exclusion provided by sec. 104(a)(2).

[10]  Under the 1996 amendment, which does not otherwise change the sec. 104(a)(2) analysis set forth in Commissioner v. Schleier, 515 U.S. 323, 336-337 (1995), the personal injury or sickness must be physical in nature to exclude damages from gross income.

Schleier, 515 U.S. 323, 336 (1995), established those requirements as:

> First, the taxpayer must demonstrate that the underlying cause of action giving rise to the recovery is "based upon tort or tort type rights"; and second, the taxpayer must show that the damages were received "on account of personal injuries or sickness."

Under the 1996 amendment, the personal injury or sickness for which the damages are received must be physical in nature.

In the present case, Mrs. Prasil received the $7,650 settlement payment pursuant to a settlement agreement with Heartland. When damages are received pursuant to a settlement agreement, the nature of the claim that was the actual basis for settlement controls whether such amounts are excludable under section 104(a)(2). United States v. Burke, supra at 237. The determination of the nature of the claim is a factual inquiry and is generally made by reference to the settlement agreement. Robinson v. Commissioner, 102 T.C. 116, 126 (1994), affd. in part and revd. in part 70 F.3d 34 (5th Cir. 1995), and cases cited therein. If the settlement agreement lacks express language stating what the settlement amount was paid to settle, we look to the intent of the payor, Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965), affg. T.C. Memo. 1964-33 (citing Agar v. Commissioner, 290 F.2d 283, 284 (2d Cir. 1961), affg. per curiam T.C. Memo. 1960-21), based on all the facts and circumstances of the case, including the complaint filed and details surrounding

the litigation.  Robinson v. Commissioner, supra at 127.  If a settlement is attributable to claims based on tort or tort type rights as well as other rights, it may be necessary to determine which portion of the settlement is attributable to damages received based on tort or tort type rights.  Similarly, it may be necessary to determine which portion, if any, of the settlement may be attributable to damages received for personal physical injuries or physical sickness.

In the instant case, we address first the question of whether the $7,650 settlement payment was received on account of a personal physical injury or physical sickness, if any.  That is because a resolution of this question in respondent's favor controls the disposition of the issue before us.

Petitioners would have this Court conclude that Heartland paid the $7,650 settlement payment to Mrs. Prasil because she suffered a "physical sickness"; i.e., she got very ill and her Sweet's syndrome worsened as a result of "the abuse that she took from this man [Mr. Lakner] down at work" such that she had to be hospitalized and could not walk.  However, Mrs. Prasil admitted that she suffered from a preexisting medical condition prior to employment with Heartland, and there is no comparative evidence of the nature of her condition before, during, or after employment with Heartland to determine the nature of Mrs. Prasil's sickness, let alone the cause of her sickness.  In fact,

Mrs. Prasil testified that "They [the doctors] thought I had leukemia, too. And that's what was causing the Sweet's syndrome." Further, Mrs. Prasil's testimony appears to describe manifestations of a stress-induced illness; i.e., rash and fever, where "things that would happen to me [Mrs. Prasil] made me much worse". Other than petitioners' own self-serving testimony, the record is devoid of any evidence that Heartland's sex discrimination caused a physical injury to or the physical sickness of Mrs. Prasil. We are not required to, and do not, accept petitioners' self-serving testimony without corroborating evidence. Lerch v. Commissioner, 877 F.2d 624, 631-632 (7th Cir. 1989), affg. T.C. Memo. 1987-295; Geiger v. Commissioner, 440 F.2d 688, 689-690 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-159; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Although we sympathize with Mrs. Prasil's medical condition, the uncorroborated evidence in the record does not support a conclusion that her maladies constitute a physical injury or a physical sickness caused by the conduct of Heartland or of Mr. Lakner.

Even assuming arguendo that Mrs. Prasil suffered a personal physical injury or physical sickness, the record does not support the conclusion that Mrs. Prasil received the $7,650 settlement payment on account of such physical injury or physical sickness. Pursuant to the settlement agreement, Mrs. Prasil released "any

and all claims", including claims based on sex discrimination, against Heartland in exchange for $7,650. However, the settlement agreement did not specifically carve out any portion of the settlement payment as a settlement on account of personal physical injury or physical sickness, let alone make reference to a physical injury or a physical sickness, if any, resulting from any sex discrimination by Heartland. Because the settlement agreement did not allocate any part of the settlement payment on account of a personal physical injury or physical sickness, and there is no evidence in the record to support such an allocation, we are not in a position to conclude that any part of the settlement payment was on account of physical injury or physical sickness. In sum, we are unable to find that any portion of the $7,650 settlement payment was intended to compensate Mrs. Prasil for a personal physical injury or physical sickness.

In view of the foregoing, we hold that the $7,650 settlement payment that Mrs. Prasil received in 1999 in settlement of a sex discrimination claim against her former employer is includable in petitioners' gross income for 1999. Accordingly, we sustain respondent's determination in this regard.

We have considered all of the other arguments made by petitioners and, to the extent that we have not specifically addressed them, we conclude they are without merit.

To reflect our disposition of the disputed issue, as well as the parties' concessions,

<u>Decision will be entered</u>

<u>under Rule 155</u>.