T.C. Summary Opinion 2004-60

UNITED STATES TAX COURT

CARRIE DAWN MURRAY, n.k.a. CARRIE DAWN WEAVER, Petitioner _v_.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7934-02S.          Filed May 13, 2004.

Carrie Dawn Weaver, pro se, and Jeffrey Weaver (specially
recognized), for petitioner.

James J. Posedel, for respondent.

GOLDBERG, Special Trial Judge:  This case was heard pursuant
to the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  The decision to be
entered is not reviewable by any other court, and this opinion
should not be cited as authority.  Unless otherwise indicated,
subsequent section references are to the Internal Revenue Code in

effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioner's Federal income tax of $12,229, and an accuracy-related penalty of $2,446, for the taxable year 1999.

The issues for decision are:  (1) Whether a $50,000 payment petitioner received in 1999 is excludable from gross income under section 104(a)(2), and, if not, whether the portion of the payment retained by petitioner's attorney is includable in petitioner's income; and (2) whether petitioner is liable for the accuracy-related penalty under section 6662(a) for a substantial understatement of tax.

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.  Petitioner resided in Riverside, California, on the date the petition was filed in this case.

In June 1996, petitioner began working as a loss prevention agent for the May Department Stores Company, d.b.a. Robinsons-May ("the May Company").  On March 23, 1997, petitioner was injured while working at one of the May Company department stores.  In attempting to apprehend a disabled shoplifter, petitioner's hand became stuck in a wheelchair, causing injury to her right thumb

and index finger.  Petitioner stopped working for the May Company on March 27, 1997.

In November 1997, petitioner filed a discrimination charge against the May Company with the California Department of Fair Employment and Housing.  Petitioner subsequently was issued a right to bring a civil action, and, on February 19, 1998, she filed a complaint with the Superior Court of the State of California, County of Los Angeles.  In the complaint filed against the May Company and 10 unnamed defendants, petitioner alleged that 2 employees of the May Company engaged in conversation with petitioner which was "sexually demeaning, insulting and offensive towards women", and that they were involved in other instances of sexual harassment toward petitioner.  The complaint further alleged that after petitioner had informed the May Company that she was leaving her position, and after petitioner received a severe hand injury while apprehending a shoplifter, petitioner was forced to abandon a workers' compensation claim because one of the employees who had been harassing her was assigned to handle the workers' compensation claim for the company.

Petitioner's complaint alleged three causes of action.  The first cause of action was based upon the following:

> Pursuant to Government Code section 12490(a), (f) and (i), respectively, it is an unlawful employment practice for: an employer, because of the sex of any person, to discriminate against the person in compensation or in terms, conditions,

or privileges of employment; for any employer to discharge, expel, or otherwise discriminate against any person because the person has filed a complaint, testified or assisted in any proceeding regarding a complaint of discrimination or sexual harassment; and, for any employer to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring.

Petitioner's second and third causes of action were for a "wrongful termination in violation of public policy" and for the "intentional infliction of emotional distress", both based upon the acts related to the alleged sexual discrimination and harassment. Petitioner further alleged that as a result of each of the three claims, she suffered "emotional harm, severe mental anguish, nervous shock, grief, shame, humiliation, embarrassment, anger, loss of income and loss of employment opportunities." Finally, the complaint sought judgment for past and future loss of income and employment benefits; general, special, and punitive damages; pre-judgment interest; and attorney's fees and costs.

On May 21, 1999, petitioner filed with the California court a document titled "Plaintiff Carrie Murray's Ex Parte Application to Continue Status Conference Re Arbitration Completion". In this document, petitioner stated that "This is an action for sexual harassment brought by Plaintiff Carrie Murray". No mention was made of the physical injury to petitioner's hand.

In a document prepared by the May Company titled "Mandatory Settlement Conference Statement" and dated September 1, 1999, the underlying case was described as "a sex harassment, hostile work

environment case." This document included a detailed statement of the facts relevant to the case from the point of view of the May Company. The only mention of the physical injury to petitioner's hand was the following:

> A few weeks later, Murray stuck her finger in the spokes on a wheelchair while trying to apprehend a disabled shoplifter. She suffered a sprained finger and filed a workers comp claim. The claim was assigned to Ahonen because of his knowledge of loss prevention. He had one friendly conversation with Plaintiff that he documented and she left a pleasant voice mail to him after she abandoned her injury claim. * * * Murray claims that Ahonen was assigned to her comp claim as an act of retaliation. * * * Mackay had nothing to do with the assignment of the comp claim to Ahonen and Murray never complained to Robinsons-May although she reposed trust in Mackay. Whether assigning Ahonen to the claim is retaliation as defined in the government code is dubious to put it mildly.

Finally, in petitioner's "Mandatory Settlement Conference Brief", dated September 2, 1999, petitioner stated that "This action is brought by [petitioner] to recover damages for injuries incurred by her as the result of sexual harassment". The only reference that was made to the physical injury to petitioner's hand was in the context of the workers' compensation claim and the alleged retaliatory conduct in assigning a harasser to the claim. However, the document stated that petitioner's "finger is now permanently deformed".

Petitioner entered into an agreement to settle her lawsuit against the May Company in November 1999. The agreement, titled "Settlement Agreement and Release of All Claims", provides in relevant part as follows:

WHEREAS, Murray's [petitioner's] employment with the [May] Company was terminated and she was compensated at her termination with severance pay; and

WHEREAS, Murray claims that her termination has resulted in her suffering financial loss and emotional distress damages;

WHEREAS, Murray has pending a lawsuit claiming breach of employment agreement, breach of the covenant of good faith and fair dealing, discrimination in violation of California Government Code and California Constitutions and wrongful termination in violation of California Government Code, Intentional and Negligent Infliction of Emotional Distress in the Superior Court of Los Angeles County * * * .

* * * * * * *

WHEREAS, Murray and the Company now desire to settle fully and finally all differences between them, including, but in no way limited to, those differences described above;

NOW, THEREFORE, in consideration of the mutual covenants and promises herein contained and other good and valuable consideration, receipt of which is hereby acknowledged, and to avoid unnecessary further litigation, it is hereby agreed by and between the parties as follows:

* * * * * * *

SECOND:

(a) * * * the Company will cause to be delivered to counsel for Murray * * * $50,000.00 as payment for alleged emotional distress. * * *

* * * * * * *

(c) Murray agrees that the foregoing payment shall constitute the entire amount of the settlement provided to her under this Agreement and that she will not seek any further compensation for any other claimed damage, costs, or attorneys' fees in connection with the matters encompassed in this Agreement relating in any way to her termination from employment and employment with the Company. * * * This release encompasses the injury claimed by Murray in March, 1997, for an on the job injury arising at the Montclair store.

(d) Murray through her counsel will dismiss [the May Company] * * * .

The agreement then set forth a general release of all claims of any kind by Murray against the May Company.

In 1999, petitioner received $26,547 of the $50,000 in settlement proceeds. Petitioner's attorney retained the remainder of the proceeds consisting of "costs advanced" of $4,620, a 40-percent contingency fee of $18,152, and a 1.5-percent payment of $681 for costs.

Petitioner filed an individual Federal income tax return for taxable year 1999 on a Form 1040, U.S. Individual Income Tax Return. Petitioner paid a tax return preparer to prepare her return, and she sought advice--both from this preparer and from the attorney who had represented her in the suit against the May Company--concerning the proper tax treatment of the settlement proceeds. In the space provided adjacent to line 21 of the Form 1040, "Other income", petitioner made the following notation:

```
THE MAY DEPT STORE          50,000.
PHYS. INJURY SETTLEMENT     <50,000.>
```

Petitioner did not include any portion of the $50,000 settlement in her income, nor did she claim any deduction for the legal expenses she incurred with respect thereto.

In the notice of deficiency, respondent determined that petitioner was required to include in gross income the full amount of the $50,000 settlement. Respondent also determined that petitioner is liable for the accuracy-related penalty under section 6662(a) for a substantial understatement of tax.

The first issue for decision is what portion, if any, of the $50,000 payment petitioner received in 1999 is excludable from gross income. We decide this issue on the merits based on the preponderance of evidence, without regard to the burden of proof. See sec. 7491(a); Rule 142(a)(1).

Section 61 provides that gross income generally includes all income from whatever source derived. However, section 104(a)(2) excludes from gross income amounts received in damages, by suit or settlement, "on account of personal physical injuries or physical sickness". In determining whether damages received are excludable under section 104(a)(2), the focus is the nature of the claim underlying the damage award. United States v. Burke, 504 U.S. 229, 237 (1992). The underlying claim giving rise to the recovery must be "based upon tort or tort type rights" and the damages must have been received "on account of personal injuries or sickness". Commissioner v. Schleier, 515 U.S. 323, 336-337 (1995). Section 104(a)(2) was amended in 1996, effective for amounts received after August 20, 1996, to require that the personal injury or sickness be physical in nature; this amendment does not otherwise change the analysis under Commissioner v. Schleier, supra. Prasil v. Commissioner, T.C. Memo. 2003-100. For purposes of section 104(a)(2), emotional distress is not treated as a physical injury or physical sickness, except for any damages received that are not in excess of the amount paid for

medical care attributable to such emotional distress.  Sec. 104(a).

Where damages are received pursuant to a settlement agreement, the nature of the claim that was the actual basis for the agreement controls whether such damages are excludable under section 104(a)(2).  Stocks v. Commissioner, 98 T.C. 1, 10 (1992); Metzger v. Commissioner, 88 T.C. 834, 847 (1987), affd. without published opinion 845 F.2d 1013 (3d Cir. 1988).  Where the settlement agreement lacks express language stating what the settlement amount was paid to settle, then the most important factor in making that determination is the intent of the payor in making the payment.  Stocks v. Commissioner, supra; Metzger v. Commissioner, supra.

Petitioner argues that the settlement proceeds represent compensation for a physical injury and therefore are excludable from income under section 104(a)(2).  Alternatively, if the Court should find that the proceeds are not excludable under section 104(a)(2), petitioner argues that the portion of the proceeds paid directly to her attorney should not be included in petitioner's income.

With respect to petitioner's first argument, we find that the settlement proceeds do not represent compensation for a physical injury.  Petitioner argues that the eventual settlement was made for claims which were not made originally in the

complaint filed in the California court; namely, claims of physical injury.  However, the settlement agreement specifically provides that the $50,000 was to be "payment for alleged emotional distress".  Furthermore, assuming arguendo that petitioner had a valid claim for damages from the injury to her hand in excess of any amounts that the May Company had previously paid her, it is evident from the record that petitioner had stopped pursuing any such claim long before she entered into the settlement agreement.  Even if her decision to do so was based upon the alleged retaliatory action by her employer, it is nevertheless clear that she abandoned the claim.  When petitioner subsequently entered into the agreement with the May Company, the intent of both parties was to settle petitioner's sexual harassment suit which she had filed with the California court.

The inclusion in the settlement agreement of the provision relating to the injury to petitioner's hand was, in the context of the overall agreement, merely an extension of the agreement's general provisions releasing the May Company from any and all claims which petitioner had against the May Company.  The use of these provisions reflects an intent to prevent future lawsuits which petitioner might have been able to bring against the May Company, but it does not reflect an intent to compensate petitioner for any physical injury.

Thus, we are convinced from the record as a whole that the entire amount of the $50,000 proceeds was intended to settle petitioner's sexual harassment claims, as those claims are reflected in the original complaint. Consequently, no portions of the proceeds received under the settlement agreement are damages received "on account of personal physical injuries or physical sickness", sec. 104(a)(2), and no portions of the proceeds are excludable from petitioner's gross income under section 104(a)(2).

Petitioner makes various arguments concerning injuries, both physical and psychological, which she asserts were caused by her employment with the May Company. Petitioner points to psychological counseling that she received prior to entering into the settlement agreement. Petitioner also argues that her emotional distress caused physical ailments which became manifest after she entered into the agreement. To this effect, petitioner provided evidence that she visited a physician in 2002 and 2003 for treatment of abdominal pain and related conditions. As discussed above, damages received for certain medical care for the treatment of emotional distress may be excludable under section 104(a)(2).[1] However, the record indicates that the

---

[1] The legislative history accompanying passage of the amendment to section 104(a)(2) clarifies that "the term emotional distress includes symptoms (e.g., insomnia, headaches, stomach disorders) which may result from such emotional distress." H.

(continued...)

psychological counseling petitioner received was general in nature and that the problems petitioner was experiencing were at most only nominally related to the sexual harassment claims. We find that neither the psychological counseling nor the visits to the physician--visits which occurred over 5 years after the termination of petitioner's employment with the May Company--are related to petitioner's sexual harassment claims.

Petitioner further argues that the physical injury to her hand caused her damages that occurred after she entered into the settlement agreement, due in part to an inability to perform certain job functions. This argument does not address the relevant issue in this case. The relevant issue is the intent of the May Company in paying the $50,000 settlement to petitioner. See Stocks v. Commissioner, supra; Metzger v. Commissioner, supra. We have found that the intent behind the payment was to settle the sexual harassment claims made in petitioner's lawsuit. Any harm connected with the hand injury that was suffered by petitioner after entering into the settlement agreement could not have affected the intent behind making the payment at the time of the agreement.[2]

---

[1](...continued)
Conf. Rept. 104-737, at 301 n.56 (1996), 1996-3 C.B. 741, 1041; see Prasil v. Commissioner, T.C. Memo. 2003-100.

[2]At trial, petitioner cited Moe v. United States, 326 F.3d 1065 (9th Cir. 2003), for the proposition that "the chronological
(continued...)

We next address petitioner's argument that the portion of the settlement proceeds retained by her attorney should not be included in her gross income.  This Court has consistently held that "taxable recoveries in lawsuits are gross income in their entirety to the party-client and that associated legal fees-- contingent or otherwise--are to be treated as deductions." Kenseth v. Commissioner, 114 T.C. 399, 411 (2000), affd. 259 F.3d 881 (7th Cir. 2001).  While there is a split of authority among the Federal Courts of Appeals as to whether certain contingent fees may be excludable from the client's income under the laws of certain States, in Kenseth v. Commissioner, supra, this Court has concluded that we will continue to adhere to our holding in O'Brien v. Commissioner, 38 T.C. 707 (1962), affd. per curiam 319 F.2d 532 (3d Cir. 1963), that contingent fee agreements "come within the ambit of the assignment of income doctrine and do not serve, for purposes of Federal taxation, to exclude the fee from the assignor's gross income."  Kenseth v. Commissioner, supra at 412.  Furthermore, the Court of Appeals for the Ninth Circuit[3]

---

[2](...continued)
order of the injury and emotional distress didn't matter."  That case, in which the court held that psychological injury which results in physical injury is within the scope of the Federal Employees' Compensation Act, 5 U.S.C. ch. 5 (2000), has no application with respect to the provisions of sec. 104(a)(2) of the Internal Revenue Code.

[3]But for the provisions of sec. 7463(b), the decision in this case would be appealable to the U.S. Court of Appeals for
(continued...)

explicitly held in Benci-Woodward v. Commissioner, 219 F.3d 941 (9th Cir. 2000), affg. T.C. Memo. 1998-395, that nothing in California law acts to exclude the contingent fee portion of damages from a client's income.  Thus, petitioner must include the entire amount of the settlement payment in her gross income, even the portion retained by her attorney.  Sec. 61(a).  We note that although petitioner did not physically receive the portion of the settlement proceeds used to pay the attorney's fees, she did receive the benefit of those funds in the form of payment for the services required to obtain the settlement.

The second issue for decision is whether petitioner is liable for the accuracy-related penalty under section 6662(a) for a substantial understatement of tax.  We decide this issue on the merits based on the preponderance of the evidence, without regard to the burden of production or the burden of proof.  Sec. 7491(a), (c); Rule 142(a).

Section 6662(a) imposes a 20-percent penalty on the portion of an underpayment attributable to any one of various factors, one of which is any substantial understatement of income tax. Sec. 6662(b)(2).  A substantial understatement of income tax

---

[3](...continued)
the Ninth Circuit.  Sec. 7482(b)(1)(A).  This Court generally applies the law in a manner consistent with the holdings of the Court of Appeals to which an appeal of its decision lies, Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), even in cases subject to sec. 7463(b).

exists if the amount of the understatement exceeds the greater of $5,000 or 10 percent of the tax required to be shown on the return. Sec. 6662(d)(l)(A). Generally, the amount of an understatement is reduced by the portion of the understatement which is attributable to either (1) the tax treatment of any item for which there is or was substantial authority, or (2) any item with respect to which (a) the relevant facts were adequately disclosed on the return or on a statement attached to the return, and (b) the taxpayer had a reasonable basis for the tax treatment thereof. Sec. 6662(d)(2)(B).

Section 6664(c)(1) provides that the penalty under section 6662(a) shall not apply to any portion of an underpayment if it is shown that there was reasonable cause for the taxpayer's position and that the taxpayer acted in good faith with respect to that portion. The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Depending upon the other facts and circumstances of a given case, reliance on tax professionals may constitute reasonable cause and good faith. Sec. 1.6664-4(b)(2) Example (1), Income Tax Regs. The reliance must be reasonable and the advice must be based upon all pertinent facts and circumstances and the relevant law. Sec. 1.6664-4(c), Income Tax Regs.

A substantial understatement of tax exists with respect to petitioner's 1999 income tax.  However, petitioner relied on the advice of both her attorney and her tax return preparer in coming to the conclusion that the settlement proceeds were excludable from her gross income.  Based on the record before us, we find that this reliance was reasonable and in good faith.  We therefore hold that petitioner is not liable for the section 6662(a) accuracy-related penalty.

Respondent concedes that petitioner is entitled to a miscellaneous itemized deduction for the legal fees of $23,453 which petitioner paid in connection with the lawsuit. Miscellaneous itemized deductions are allowed to the extent they exceed 2 percent of the taxpayer's adjusted gross income.  Sec. 67(a).  A Rule 155 computation is required in this case to calculate the proper amount of the deficiency taking into account petitioner's itemized deductions.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered

under Rule 155.