T.C. Memo. 2004-135

UNITED STATES TAX COURT

WILLIAM L. AND MARSHA G. KIDD, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7980-03.                    Filed June 10, 2004.

William L. Kidd and Marsha G. Kidd, pro sese.

Margaret S. Rigg, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, Judge: Petitioners petitioned the Court to redetermine a $43,012 deficiency in their 2000 Federal income tax and an $8,602 accuracy-related penalty under section 6662(a) and (d) for substantial understatement of income tax.[1] Following

_____

[1] Unless otherwise noted, section references are to the
                                        (continued...)

petitioners' concession, we decide whether section 104(a)(2) excludes from their 2000 gross income $132,000 that petitioner William L. Kidd (Kidd) received in settlement of the unspecified "equitable remedy" awarded to him in his reverse discrimination lawsuit (lawsuit) against the State of California and two of its agencies (collectively, defendants).  We hold it does not. We also decide whether petitioners are liable for an accuracy-related penalty under section 6662(a) and (d).  We hold they are not.

## FINDINGS OF FACT

Some facts were stipulated.  The stipulated facts and the exhibits submitted therewith are incorporated herein by this reference.  We find the stipulated facts accordingly. Petitioners, husband and wife, resided in California when their petition was filed.  They filed a joint 2000 Federal income tax return (2000 return) on August 19, 2001.

In 1985, Kidd and Edward Swiden (Swiden) commenced the lawsuit in the California Superior Court for Sacramento County (superior court) by filing a petition for writ of mandamus and complaint for declaratory and injunctive relief.  The defendants were the State of California (California), the California Personnel Board (board), and the California Department of Fish

---

[1](...continued)
applicable versions of the Internal Revenue Code.

and Game (department).  The plaintiffs asserted in the lawsuit that the department's affirmative action policy known as supplemental certification was in violation of their rights under (1) the Equal Protection Clause of the 14th Amendment to the U.S. Constitution, (2) the merit principle described in Cal. Const. art. VII, sec. 1, subdiv. b, and (3) Cal. Govt. Code secs. 19704, 19705, and 19057 (West 1993).[2]  Supplemental certification allowed certain minority and female applicants to be selected for positions in California civil service to the exclusion of individuals who performed better on a competitive examination. The plaintiffs had each applied for employment positions with the department, and the department had through supplemental certification filled those positions with individuals who had performed worse than plaintiffs on the competitive examinations. The plaintiffs did not in the lawsuit request an award of monetary damages.  The plaintiffs prayed that the defendants be ordered to stop using supplemental certification and that the individuals who were hired pursuant to supplemental certification be discharged from employment.

---

[2] Cal. Const. art. VII, sec. 1, subdiv. b provides:  "In the civil service permanent appointment and promotion shall be made under a general system based on merit ascertained by competitive examination."  Cal. Govt. Code sec. 19057.1 (West 1993) requires that appointments to California civil service be made from the top three ranks of eligible applicants as determined by competitive examination.  Cal. Govt. Code secs. 19704 and 19705 (West 1993) prohibit the appointing power from receiving any data related to an applicant's race or gender.

While the lawsuit was pending in superior court, the U.S. Supreme Court decided in <u>Richmond v. J.A. Croson Co.</u>, 488 U.S. 469 (1989), that a State government must have strong evidence of past discrimination before it can employ racial or gender classifications. On the basis of this decision, the board reexamined the department's supplemental certification program and concluded that it was improper. The board suspended the department's use of that program in December 1989. Shortly thereafter, the superior court dismissed the lawsuit as moot in that the department was essentially then in compliance with the plaintiffs' request in the lawsuit that it abandon its supplemental certification program. The superior court declined in connection with the dismissal to grant the plaintiffs' request to discharge the individuals employed through the supplemental certification program.

The plaintiffs appealed the dismissal of the lawsuit to the California Court of Appeal for the Third District (court of appeal). The court of appeal reversed the dismissal and remanded the case to the superior court with instructions to declare that the plaintiffs' rights under the California Constitution and California Government Code were violated by the use of supplemental certification, to enjoin the defendants from using supplemental certification, and to "fashion an equitable remedy to redress the violation of plaintiffs' constitutional and

statutory rights". See <u>Kidd v. State</u>, 72 Cal. Rptr. 2d 758, 773 (Cal. App. 1998). The court of appeals rejected as part of any equitable remedy that the defendants be ordered to discharge from employment those individuals who were hired pursuant to the supplemental certification. The court of appeal rested its decision on its interpretation of the California Constitution and California Government Code and declined to decide the plaintiffs' claim under the U.S. Constitution.

Upon remand, counsel for the parties to the lawsuit met on a few instances in the presiding Judge's chambers to discuss settlement of the lawsuit and, more particularly, the specific equitable remedy to which the plaintiffs were entitled under the directive of the court of appeal. During their discussions, the parties to the lawsuit disputed the form of that remedy in that neither plaintiff still wanted the civil service position for which he had applied, and, even if he did, the results of his prior competitive examination were too old to qualify him for that position. The parties' counsel discussed settling the equitable remedy award through a monetary payment but this was problematic in that Swiden had suffered an economic loss from the defendants' violation of his rights but Kidd had not; Kidd had earned more money during the relevant period than he would have earned had he been employed in the civil service position for which he had applied. The defendants made a settlement proposal

that was based simply on Swiden's lost wages and employment benefits. This proposal was rejected by the plaintiffs. Finally, on September 17, 1999, while in the presiding Judge's chambers, counsel for the parties to the lawsuit agreed that the defendants would pay a total of $350,000 to the plaintiffs in settlement of the lawsuit, inclusive of attorney's fees and litigation costs, and that the plaintiffs and their attorneys would have to apportion this amount among them. The record does not explain the mechanics underlying the calculation of the $350,000 payment. Nor did the parties to the lawsuit specifically allocate any portion of that amount to a particular claim raised in the lawsuit.

The law firm of Nageley, Meredith & Miller (Nageley) and the Pacific Legal Foundation (Pacific) represented the plaintiffs in the lawsuit. In 2000, the defendants paid the $350,000 to Nageley in its capacity as the trustee responsible for distributing the proper portions of this payment to the plaintiffs and their counsel. Nageley paid itself and Pacific a total of $75,000 of the $350,000 for attorney's fees and, on the basis of an agreement between the plaintiffs, paid $132,000 to Kidd and the rest ($143,000) to Swiden. Nageley did not withhold any Federal income taxes on the $132,000 payment that it made to Kidd.

Petitioners' 2000 return was prepared by their certified public accountant Wendy Boise (Boise). During the discussions in chambers mentioned above, Boise had asked Kidd whether any settlement payment that he received would be reported as income to him, and plaintiffs' counsel relayed this question to the defendants' counsel and to the presiding Judge. The latter two individuals declined to opine on the matter and referred the plaintiffs to Nageley in its capacity as trustee. By way of conversations between the plaintiffs and Nageley, Nageley led Kidd to believe that any settlement would not be taxed to him and that he would not be issued a Form 1099-MISC, Miscellaneous Income, as to any payment that he received pursuant to the settlement. Kidd also was advised by other attorneys that they would not issue a Form 1099-MISC to their clients in a similar situation.

In early 2001, contrary to his understanding, Kidd received a 2000 Form 1099-MISC from Nageley that reported that the $132,000 was taxable to him as "other income". Kidd asked Boise not to report the $132,000 on petitioners' 2000 return, and she did not. Boise advised Kidd to attach to that return the 2000 Form 1099-MISC issued to him, but he asked her not to do so because he believed that he would be admitting to its taxability. Kidd also noted to Boise that the $132,000 would be reported to respondent on respondent's copy of the 2000 Form 1099-MISC.

Neither Boise nor petitioners attached the 2000 Form 1099-MISC to petitioners' 2000 return.

## OPINION

We decide whether the $132,000 payment is includable in petitioners' 2000 gross income. Petitioners argue it is not. According to petitioners, Kidd received this payment in settlement of the unspecified "equitable remedy" that was awarded to him for injuries which were unrelated to traditional work-related compensation such as back pay or a lost job opportunity. Petitioners assert that the claims underlying the lawsuit were tortlike in nature and that the $132,000 payment compensated Kidd for a personal physical injury. As to the latter, petitioners contend, a personal physical injury under section 104(a)(2) need not manifest itself like a broken bone would but may be of a latent type such as an injury to an individual's dignity or self-respect. Respondent determined and argues that the $132,000 payment was includable in petitioners' 2000 gross income. According to respondent, petitioners bear the burden of proof as to this deficiency and have failed to establish that either (1) the settlement amount was paid on account of personal physical injuries or (2) a cause of action underlying the lawsuit was based upon tort or tort type rights. Respondent asserts, without reference to any particular, that petitioners have neither asserted nor established that section 7491(a) applies in

this case to place upon respondent the burden of proof as to the deficiency.

We agree with respondent that section 104(a)(2) does not exclude the $132,000 payment from petitioners' 2000 gross income. We do so, however, for reasons different than the burden of proof grounds upon which respondent relies. We decide the legal issue at hand on the basis of the record, without regard to which party bears the burden of proof.

Section 61(a) provides that gross income includes all income from whatever source derived. Section 61(a) is construed broadly to reach any accession to wealth. Exclusions from gross income are construed narrowly. Commissioner v. Schleier, 515 U.S. 323, 328 (1995); United States v. Burke, 504 U.S. 229, 233 (1992).

The parties disagree over the applicability of section 104(a)(2) to this case. That section as applicable here excludes from gross income "the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness". In this context, the terms "physical injury" and "physical sickness" do not include emotional distress, except to the extent of damages not in excess of the amount paid for medical care described in section 213(d)(1)(A) and (B) attributable to emotional distress. See sec. 104(a) (flush language).

The term "damages received", as used in section 104(a)(2), denotes an amount received "through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." Sec. 1.104-1(c), Income Tax Regs.  In the absence of bona fide language in a settlement agreement as to the reason for a settlement payment, we discern that reason by determining the intent of the payor in making the payment.  Robinson v. Commissioner, 102 T.C. 116, 127 (1994), affd. in part and revd. in part on another issue not relevant herein 70 F.3d 34 (5th Cir. 1995).  We do so on the basis of all the facts and circumstances of the case, including an analysis of the complaint filed and the details surrounding the litigation.  Id.

The $132,000 payment must meet a two-prong test in order for it to be excluded under section 104(a)(2).  First, the underlying cause of action giving rise to Kidd's recovery of the payment must be based upon tort or tort type rights.  Second, the payment must be received on account of personal physical injuries or physical sickness.  Commissioner v. Schleier, supra at 328; see also sec. 104(a)(2); sec. 1.104-1(c), Income Tax Regs.  Unless both of these prongs are met, the payment is not excludable from petitioners' gross income under section 104(a)(2).  E.g., Prasil v. Commissioner, T.C. Memo. 2003-100.

We begin our analysis with the second prong.  The court of appeals awarded Kidd an unspecified equitable remedy for the violation of his rights under the California Constitution and California Government Code, and the defendants paid $132,000 to Kidd in settlement of this award.  Under the facts herein, we conclude that the $132,000 was not paid to Kidd for personal physical injuries or physical sickness within the meaning of section 104(a)(2).  No exclusion is available under that provision insofar as the settlement was paid to compensate him for injuries most akin to emotional distress.  Sec. 104(a)(2) and flush language; see H. Conf. Rept. 104-737, at 301 n.56 (1996), 1996-3 C.B. 741, 1041 n.56 (emotional distress, including symptoms such as insomnia, headaches, and stomach disorders, is not considered a physical injury or physical sickness, except that an exclusion may be allowed to the amount paid for medical care attributable to the emotional distress).  See generally Black's Law Dictionary 542 (7th ed. 1999) ("emotional distress" denotes "A highly unpleasant mental reaction (such as anguish, grief, fright, humiliation, or fury) that results from another person's conduct; emotional pain and suffering.").  In fact, Kidd asserted in this proceeding that he believes that the $132,000 compensated him for the "abuse and mental distress" that he suffered as a result of the defendants' treatment of him as a second class citizen.  We conclude that none of the $132,000 is

attributable to personal physical injuries or physical sickness and hold that none of that payment may be excluded from petitioners' gross income under section 104(a)(2). We note that petitioners have not asserted that Kidd paid for any medical care attributable to emotional distress, so as to come within the exception described in the flush language of section 104(a), and that the record does not establish that any such payments were in fact made.

Respondent also determined that petitioners are liable for the accuracy-related penalty under section 6662(a) and (d). Section 6662(a) and (d) imposes an accuracy-related penalty if any portion of an underpayment is attributable to a substantial understatement of income tax. An understatement of income tax is substantial if it exceeds 10 percent of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1). Respondent bears the burden of production under section 7491(c) and must come forward with sufficient evidence indicating that it is appropriate to impose an accuracy-related penalty. Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Once respondent has met this burden, the taxpayer must come forward with persuasive evidence that the accuracy-related penalty does not apply. Id. The taxpayer may establish, for example, that part or all of the accuracy-related penalty is inapplicable because it is attributable to an understatement for which the taxpayer acted

with reasonable cause and in good faith.  Sec. 6664(c)(1).

Whether a taxpayer acted as such is a factual determination, sec.

1.6664-4(b)(1), Income Tax Regs., for which the taxpayer's effort

to assess the proper tax liability is an important consideration.

Here, respondent has met his burden of production in that

the understatement on petitioners' return is "substantial" within

the meaning of section 6662(d)(1).  Petitioners argue that they

acted reasonably and in good faith towards the subject matter of

the deficiency.  We agree.  On the basis of the record before us,

we find that petitioners were cognizant as to the issue of the

taxability of the $132,000 and that they reasonably relied upon

the advice and representations of professionals to conclude that

the payment was not taxable.  United States v. Boyle, 469 U.S.

241, 250 (1985) (reasonable reliance on the advice of a competent

adviser may be a defense to the accuracy-related penalty).

Although respondent notes correctly that petitioners did not heed

Boise's advice to attach the 2000 Form 1099-MISC to their 2000

return, we know of no requirement (nor has respondent identified

any such requirement) that petitioners have attached that form to

their 2000 return.[3]  We also decline to find as a fact

respondent's assertion on brief that petitioners did not heed

Boise's advice to include the $132,000 in their income.  The

---

[3] We note our finding that Nageley did not withhold any
Federal income tax on the $132,000 payment that it made to Kidd.

record does not establish such a finding, and respondent does not even include this assertion in his brief as a proposed finding of fact.  On the basis of section 6664(c), we hold for petitioners as to the accuracy-related penalty.

All arguments made by the parties have been considered, and those arguments not discussed herein have been found to be without merit.  Accordingly,

<u>Decision will be entered for respondent as to the deficiency and for petitioners as to the accuracy-related penalty</u>.