T.C. Summary Opinion 2004-114


UNITED STATES TAX COURT


NEDRA BOLDEN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 194-03S.                    Filed August 25, 2004.


Nedra Bolden, pro se.

<u>Hieu C. Nguyen</u>, for respondent.


DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time that the petition was filed.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined a deficiency in petitioner's Federal income tax of $14,441 for 2000 and an accuracy-related penalty of $2,888 under section 6662(a). The issue for decision is whether a $50,000 payment received by petitioner in 2000 is excludable from gross income under section 104(a)(2).

## Background

The stipulation of facts and the exhibits received into evidence are incorporated herein by reference. Petitioner resided in Los Angeles, California, at the time the petition was filed.

Petitioner began working for Universal City Studios, Inc. (Universal), on or about September 1998. Petitioner filed racial discrimination charges with the California Department of Fair Employment and Housing against Universal and various individuals. The charges alleged a cause of action for racial harassment, racial discrimination, and retaliation "for her race" and her complaints about discrimination and harassment.

Thereafter, on or about December 14, 1999, petitioner filed a racial discrimination complaint against Universal in the Superior Court for the County of Los Angeles.

In an effort to resolve all differences and avoid litigation, petitioner entered into a "CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE" (settlement agreement) with Universal on February 8, 2000. The settlement agreement provided that

Universal would pay petitioner $50,000 in exchange for her request for a dismissal with prejudice of all pending claims and her resignation.  The settlement agreement also provided in pertinent part:

2.  The Parties agree to the following * * *:

*          *          *          *          *

d.  The Parties agree that the Settlement Payment represents non-wage damages for injuries arising out of Bolden's claims.  The Parties further agree that the Settlement Payment constitutes non-wage income, and shall be subject of an IRS Form 1099 * * *. Bolden agrees to hold Universal, and any of its current or former officers, agents, and employees harmless from, and indemnify them against, any and all claims, assessments and/or penalties, and any reasonable attorneys' fees incurred in responding thereto, made, claimed, sought, or imposed by the Internal Revenue Service * * * in regard to any amounts due or claimed to be due to such taxing authority or agency as a result of Bolden's tax treatment of the Settlement Payment. * * *

*        *        *        *        *        *        *

16.  * * * Bolden also acknowledges that Universal has advised her to consult with an attorney, and that she has in fact consulted with an attorney, concerning this Agreement * * *.

*        *        *        *        *        *        *

THE UNDERSIGNED HAVE READ AND UNDERSTAND THE TERMS AND CONDITIONS OF THE FOREGOING SETTLEMENT AGREEMENT AND RELEASE, AND Bolden SPECIFICALLY ACKNOWLEDGES THAT SHE HAS CONSULTED WITH AN ATTORNEY REGARDING THE EXECUTION OF THIS AGREEMENT.  IN ADDITION, THE PARTIES WARRANT THAT THE SETTLEMENT AGREEMENT AND RELEASE CONTAINS THE ENTIRE AGREEMENT BETWEEN THE PARTIES HERETO AND NO PROMISE, INDUCEMENT OR AGREEMENT NOT EXPRESSLY CONTAINED HEREIN HAS BEEN MADE.

The settlement agreement was signed by petitioner and her attorney.

Petitioner filed a tax return for taxable year 2000. In that return, petitioner excluded from her gross income the $50,000 that she received from Universal under the settlement agreement. In the notice of deficiency, respondent determined that petitioner is not entitled to exclude from her gross income the settlement amount at issue.

## Discussion

The Commissioner's deficiency determinations in the notice of deficiency are presumed correct and, generally, taxpayers bear the burden of proving that the Commissioner's determinations are incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Under certain circumstances, however, section 7491(a) may shift the burden to the Commissioner. The issue in this case is a question of law, and the Court decides the issue without regard to the burden of proof. Therefore, section 7491(a) is inapplicable.

### Taxability of Payment Petitioner Received

As a general rule, gross income includes income from whatever source derived. Sec. 61(a). This definition is to be construed broadly and was designed by Congress to "exert * * * 'the full measure of its taxing power.'" Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 429 (1955) (quoting Helvering

v. Clifford, 309 U.S. 331, 334 (1940)).  Exceptions to the general rule are to be construed narrowly.  Commissioner v. Schleier, 515 U.S. 323, 328 (1995).  "[E]xemptions from taxation are not to be implied; they must be unambiguously proved." United States v. Wells Fargo Bank, 485 U.S. 351, 354 (1988).

Section 104(a)(2) excludes from gross income "the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness."  (Emphasis added.)

The regulations define "damages received" as "an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution."  Sec. 1.104-1(c), Income Tax Regs.  Damages received are excludable from gross income only when:  (1) The underlying cause of action giving rise to recovery is based on tort or tort type rights, and (2) the damages were received on account of personal injuries or sickness.  Commissioner v. Schleier, supra at 337.  The second prong of this test "has since been extended to apply to the amended version of section 104, with the corresponding change that the second prong now requires proof that the personal injuries or sickness for which damages were received were physical in nature."  Venable v. Commissioner,

T.C. Memo. 2003-240; see also <u>Shaltz v. Commissioner</u>, T.C. Memo. 2003-173; <u>Henderson v. Commissioner</u>, T.C. Memo. 2003-168, affd. ___ Fed. Appx. ___ (9th Cir., July 16, 2004); <u>Prasil v. Commissioner</u>, T.C. Memo. 2003-100.

When the amounts are received as part of a settlement agreement, it is the nature of the claim that was <u>the basis for the settlement</u> that controls whether such amounts are excludable under section 104(a)(2). <u>United States v. Burke</u>, 504 U.S. 229, 237 (1992). This determination is factual and should be made in light of the settlement agreement. <u>Robinson v. Commissioner</u>, 102 T.C. 116, 126 (1994), affd. in part and revd. in part 70 F.3d 34 (5th Cir. 1995). The critical question to be asked is: "In lieu of what was the settlement paid?" <u>Bagley v. Commissioner</u>, 105 T.C. 396, 406 (1995), affd. 121 F.3d 393 (8th Cir. 1997). All relevant facts and circumstances surrounding the drafting of the settlement agreement should be used to make this determination. <u>Id.</u>

"If the settlement agreement lacks express language stating that the payment was (or was not) made on account of personal injury, then the most important fact in determining how section 104(a)(2) is to be applied is 'the intent of the payor' as to the purpose in making the payment." <u>Metzger v. Commissioner</u>, 88 T.C. 834, 847-848 (1987) (quoting <u>Knuckles v. Commissioner</u>, 349 F.2d

610, 613 (10th Cir. 1965)), affd. without published opinion 845 F.2d 1013 (3d Cir. 1988).

The Court notes that the record is nearly devoid of information regarding the negotiations that led to the settlement agreement.  However, nothing in the record suggests that the relationship between petitioner and Universal was anything other than adversarial.  The settlement was reached while petitioner's charges against Universal were still pending.  Furthermore, both sides were represented by counsel.

The settlement agreement states "that the Settlement Payment represents non-wage [sic] damages for injuries arising out of Bolden's claims * * * [and] that the Settlement Payment constitute[s] non-wage [sic] income, and shall be subject of an IRS Form 1099".  The settlement agreement says nothing about physical injuries.  In this situation, the Court must look to Universal's intent in making the payment.  By referring to the payment as "nonwage income," Universal demonstrated that it expected the payment to be included in petitioner's gross income.

It is clear from other sections of the settlement agreement that it was not Universal's intention to compensate petitioner for physical injuries or physical sickness.  As consideration for the settlement agreement, petitioner was required to request a dismissal of her claims with prejudice and resign from her position at Universal.  Only after petitioner had taken the

prerequisite steps would the settlement payment be sent. By requiring petitioner to take these steps, Universal was in fact buying their release from having to fully litigate petitioner's discrimination claims.

While the Court does not dismiss the illnesses that petitioner experienced during her employment, the evidence supports the conclusion that the settlement payment was intended by Universal to be nonwage income and not to compensate petitioner for any physical injuries or physical sickness.

Since the Court has found that the settlement proceeds were not based on personal physical injuries or physical sickness, there is no need to determine whether "the underlying cause of action giving rise to the recovery * * * [was] 'based upon tort or tort type rights.'" Commissioner v. Schleier, 515 U.S. at 337 (quoting section 1.104-1(c), Income Tax Regs.). The Court holds that the $50,000 damage award is not excludable from gross income under section 104(a)(2).

Penalty Under Section 6662(a)

The Commissioner has the "burden of production in any court proceeding with respect to the liability of any individual for any penalty" under section 6662(a). Sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). To meet this burden, the Commissioner must come forward with sufficient evidence indicating that it is appropriate to impose the penalty. Higbee

v. Commissioner, supra at 447.  Once respondent meets his burden of production, petitioner must come forward with evidence sufficient to persuade the Court that respondent's determination is incorrect.  Id.  Petitioner also bears the burden of proof with regard to issues of reasonable cause, substantial authority, or similar provisions.  Id. at 446.

Section 6662(a) imposes a penalty of 20 percent of the portion of the underpayment which is attributable to, inter alia, negligence or disregard of rules or regulations.  Sec. 6662(b)(1).  Negligence is the "'lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'"  Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967)).  The term "disregard" includes any careless, reckless, or intentional disregard.  Sec. 6662(c).

No penalty shall be imposed if it is shown that there was reasonable cause for the underpayment and the taxpayer acted in good faith with respect to the underpayment. Sec. 6664(c).  The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances.  The most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability.  "Circumstances that may indicate reasonable cause and good faith include an honest

misunderstanding of fact or law that is reasonable in light of all the facts and circumstances, including the experience, knowledge and education of the taxpayer." Sec. 1.6664-4(b)(1), Income Tax Regs.; see Reynolds v. Commissioner, 296 F.3d 607, 618 (7th Cir. 2002), affg. T.C. Memo. 2000-20.

Respondent has satisfied his burden of production under section 7491(c) by establishing that petitioner received the settlement payment and failed to include it in income. Petitioner does not dispute receiving the payment.

The settlement payment represented more than 140 percent of petitioner's annual income. A reasonable and ordinarily prudent person would have sought the advice of a knowledgeable person to ensure the proper tax treatment of such a large payment. Additionally, the settlement agreement specifically stated that Universal considered the payment to be nonwage income and that they would issue a Form-1099 for the payment. The settlement agreement required petitioner to indemnify Universal against any claims or penalties arising from her tax treatment of the settlement payment. During the drafting of the settlement agreement petitioner was represented by counsel, and she could have taken that opportunity to determine the proper tax treatment of the payment. The Court holds that petitioner is liable for the accuracy-related penalty under section 6662(a).

Reviewed and adopted as the report of the Small Tax Case Division.

<u>Decision will be entered for respondent</u>.