T.C. Memo. 2006-48

UNITED STATES TAX COURT

JESSE AND TAWARA GOODE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9914-04.                    Filed March 21, 2006.

Ps did not include in their 2001 Federal income tax return payments totaling $135,000, remitted pursuant to a settlement agreement entered into between petitioner-husband (P-H) and the District of Columbia. Under the terms of the settlement agreement, the proceeds at issue were designated as attorney's fees and "claims and out-of-pocket expenses", and were to be considered as non-taxable amounts pursuant to sec. 104(a)(2), I.R.C. Ps were not furnished with a timely, properly issued Form 1099-Misc., Miscellaneous Income.

<u>Held</u>: Ps are not entitled to exclude the $135,000 settlement payment from their gross income under sec. 104(a)(2), I.R.C. The record does not establish that

P-H received any part of the $135,000 sum on account of personal physical injury or physical sickness, as required by sec. 104(a)(2), I.R.C.

Held, further, Ps are liable for accuracy-related penalties pursuant to sec. 6662, I.R.C.

Held, further, Jurisdiction of this Court is not available to consider Ps claim for suspension of interest under sec. 6404(g), I.R.C.

Thomas F. DeCaro, Jr., for petitioners.

Innessa Glazman Molot, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

NIMS, Judge: Respondent determined a deficiency of $146,316 in petitioners' 2001 Federal income tax, as well as an accuracy-related penalty under section 6662(a) and (d) of $29,263 for substantial understatement of income tax. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue. After concessions, the issues for decision are: (1) Whether any portion or the entirety of certain unreported settlement proceeds aggregating $135,000, specifically identified in a settlement agreement between petitioner Jesse Goode and the District of Columbia as nontaxable pursuant to section 104(a)(2), is excludable from petitioners' 2001 gross income; (2) whether petitioners are liable for

an accuracy-related penalty under section 6662(a); and (3) whether jurisdiction is available to consider petitioners' claim for suspension of interest under section 6404(g).

## FINDINGS OF FACT

Some of the facts are stipulated and are found accordingly. The stipulation of facts, the supplemental stipulation of facts, and the attached exhibits are incorporated herein by this reference. At the time of the filing of their petition, petitioners resided in Washington, D.C.

Petitioner Jesse Goode was employed by the District of Columbia (the District) for approximately 8 years when placed on paid administrative leave on January 19, 2000. At that time, he was serving as the general counsel to the District's Department of Human Services. (Petitioner Tawara Goode is a party to this case solely because she filed a joint Federal income tax return with petitioner Jesse Goode for the taxable year at issue, and references herein to petitioner in the singular are to Jesse Goode).

Precipitating the District's adverse employment action against petitioner was a series of news reports in the Washington Post probing numerous, deplorable incidents of neglect and abuse suffered by residents of the District's housing facilities for individuals with developmental disabilities, which was under the aegis of the Department of Human Services. On January 17, 2001,

petitioner filed suit against the District with the United States District Court for the District of Columbia, seeking damages and declaratory and injunctive relief. The gravamen of petitioner's complaint--comprised of two underlying counts alleging, respectively, the District's infringement of petitioner's First Amendment rights under 42 U.S.C. sec. 1983 (2000) and violation of the D.C. Whistleblower Reinforcement Act of 1998, D.C. Code sec. 1-615.54--concerns the District's averred retaliatory conduct against petitioner. Such reprisal was directed at petitioner, according to the complaint, because of his purported endeavor to inform various government agencies and officials of the dire conditions then prevalent in the District's developmentally disabled housing program. Petitioner's damages were enumerated in the complaint as comprising "emotional and mental anguish, humiliation and embarrassment, ridicule, physical pain and physical upset, damage to [petitioner's] professional reputation, and damage to his reputation in the community."

Petitioner did not serve the complaint on the District. Petitioner's reason for this was to preserve the viability of one or both of the asserted claims from the pending expiration of the period of limitations without impeding the progress of the settlement negotiations, which had reached a critical juncture.

Petitioner entered into a settlement agreement and general release with the District on May 14, 2001 (the settlement). The

settlement provided for, among other specified items of consideration, the termination of petitioner's employment, a mutual omnibus release encompassing any and all litigation-related claims between the parties, and the remuneration by the District of the following compensatory sums: (i) $15,904.33, allocated as severance and accrued leave; (ii) $103,250, designated as petitioner's "claims and out-of-pocket expenses"; and (iii) $31,750, earmarked as petitioner's counsel fees and costs.  Payment of petitioner's counsel fees and costs was remitted directly to petitioner's attorneys, in accordance with the settlement.

The settlement, in a provision accompanying the enumeration of the compensatory payments, contains the following characterization of the respective $103,250 and $31,750 amounts (cumulating $135,000, the disputed settlement amount) as:

> compensatory damages pursuant to section 104(a)(2) and for out-of-pocket expenses only; * * * [the disputed settlement amount] does not constitute wages, and shall be considered as non-taxable to the fullest extent permitted by law.  The parties understand and agree that no W-2 form shall issue from the District of Columbia with respect to * * * [the disputed settlement amount].

Relying solely on such representation set forth in the settlement, petitioners did not include (and did not provide supplemental disclosure of) the disputed settlement amount in their 2001 gross income.  Of the aggregate settlement proceeds,

petitioners reported only the $15,904.33 severance payment, as properly reflected in a Form W-2, Wage and Tax Statement, which was duly issued by the District.

The District's Office of the Chief Financial Officer (the OCFO) issued a Form 1099-Misc., for the 2001 taxable year that was faulty in two respects:  it erroneously disclosed the disputed settlement amount as $357,462, and was never delivered to petitioners.  A corrected Form 1099-Misc., for taxable year 2001 (the restated 1099) inaccurately restated the disputed settlement amount as $119,154.33, listed an incorrect address for petitioner under the form's appropriate caption (corresponding to the address of one of the law firms that represented petitioner in the settlement), and was not ultimately sent to petitioner's correct address until March 24, 2004.  Correspondence from the OCFO to petitioner, dated March 22, 2004, indicates that the numerical error in the restated 1099 is the result of including the $15,904.33 severance payment in the disputed settlement amount and excluding the $31,750 attorney's fees compensation.

OPINION

1.  Burden of Proof

The parties dispute whether the burden of proof in this case has been shifted to respondent pursuant to section 7491.  Section 7491(a) imposes the burden of proof on respondent if the taxpayer introduces credible evidence with respect to any factual issue,

and complies with the requirements of section 7491(a)(2)(A) and (B) to substantiate all items at issue, maintain required records, and cooperate with reasonable requests of respondent. We find it unnecessary to decide whether petitioners have met the prerequisites of section 7491, because the record in this case is not evenly weighted and the resolution of the issues in controversy does not depend upon which party bears the burden of proof. We render a decision on the preponderance of the evidence in the record.

2.   Applicability of Section 104(a)(2)

Section 61(a) provides that gross income includes all income from whatever source derived. While it is axiomatic that section 61(a) broadly applies to any accession to wealth, statutory exclusions from income are narrowly construed. See Commissioner v. Schleier, 515 U.S. 323, 327 (1995); United States v. Burke, 504 U.S. 229, 233 (1992); Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955). As applicable here, section 104(a)(2) excludes from gross income, among other items, damages received pursuant to a settlement "on account of personal physical injuries or physical sickness".

Qualification for the section 104(a)(2) exclusion is predicated on a bipartite analysis, examining whether (1) the underlying claims were based on tort or tort type rights, and (2) the damages were received on account of personal physical

injuries or physical sickness.  <u>Commissioner v. Schleier</u>, <u>supra</u> at 337; sec. 1.104-1(c), Income Tax Regs.  This reformulation of the two-part test set forth in <u>Schleier</u> incorporates the amendment to section 104(a)(2) pursuant to the Small Business Job Protection Act of 1996, Pub. L. 104-188, sec. 1605, 110 Stat. 1838, (the SBJPA amendment), narrowing the exclusion formerly applying to personal injury damages to those that are physical in nature.  Besides the imposition of this additional prerequisite into the second prong, the applicable analysis is not otherwise altered by the SBJPA amendment.  <u>Shaltz v. Commissioner</u>, T.C. Memo. 2003-173; <u>Prasil v. Commissioner</u>, T.C. Memo. 2003-100.

The determination as to whether damages received pursuant to a settlement fall within the purview of the conjunctive two-prong test is a factual one.  <u>Robinson v. Commissioner</u>, 102 T.C. 116, 126 (1994), affd. in part, revd. in part, and remanded on another issue 70 F.3d 34 (5th Cir. 1995).  Extending beyond the "four corners" of the settlement documentation, the pertinent analysis entails a consideration of extrinsic factors informative of the nature of the underlying claims discharged by the settlement. <u>Id.</u>; see also <u>Bagley v. Commissioner</u>, 105 T.C. 396, 406 (1995) ("The critical question is, in lieu of what was the settlement paid[?]"), affd. 121 F.3d 393 (8th Cir. 1997); <u>Threlkeld v. Commissioner</u>, 87 T.C. 1294, 1306 (1986), affd. 848 F.2d 81 (6th Cir. 1988).  Relevant extrinsic factors include the details

surrounding the litigation, the allegations contained in the complaint, and the course of the settlement negotiations between the parties.  Robinson v. Commissioner, supra at 127-128.

Express allocations in a settlement, identifying payment amounts deemed eligible for the section 104(a)(2) exclusion, are generally accorded conclusive effect for tax purposes.  Fono v. Commissioner, 79 T.C. 680, 693-694 (1982), affd. without published opinion 749 F.2d 37 (9th Cir. 1984).  However, the statutory proviso contained in the penultimate sentence of section 104(a) dictates one exception to this principle of judicial deference to manifest allocations.  The penultimate sentence of section 104(a) provides: "For purposes of paragraph (2), emotional distress shall not be treated as a physical injury or physical sickness."

As elucidated in the legislative history of the SBJPA amendment, "emotional distress" denotes "symptoms (e.g., insomnia, headaches, stomach disorders) which may result from such emotional distress."  H. Conf. Rept. 104-737, at 301 n.56 (1996), 1996-3 C.B. 741, 1041 n.56.  To ascertain whether settlement proceeds fall within the section 104(a)(2) "physical injuries or physical sickness" rubric--as opposed to ineligible payments stemming from physical manifestations of emotional distress--the caselaw surveys the circumstances surrounding the origin of the injury redressed in the settlement for a sufficient

nexus, or "direct causal link", between the amount paid and the asserted physical injury.  See Lindsey v. Commissioner, 422 F.3d 684, 688 (8th Cir. 2005) ("We agree with the Tax Court that these health symptoms [i.e., fatigue, indigestion, insomnia, and incontinence] relate to emotional distress, and not to physical sickness."), affg. T.C. Memo. 2004-113; Banaitis v. Commissioner, 340 F.3d 1074, 1080 (9th Cir. 2003), affg. in part and revg. in part on a different issue T.C. Memo. 2002-5; Allum v. Commissioner, T.C. Memo. 2005-177 ("The mere mention of 'personal physical injury' in a complaint does not, by itself, serve to exclude the recovery from gross income under section 104(a)(2)".).

Judicial approbation of express settlement allocations for Federal income tax purposes is also not warranted where circumstantial factors reveal that the designation of the settlement proceeds was not the result of adversarial, arm's length, and good faith negotiations, and is incongruous with the "economic realities" of the taxpayer's underlying claims.  See Bagley v. Commissioner, supra at 406-410.

Notably, the final sentence of section 104(a) subsumes within the scope of the section 104(a)(2) exclusion settlement

proceeds designated as reimbursement for medical care attributable to the treatment of emotional distress. The record does not disclose any such proceeds, as discussed infra.

Petitioner contends that the express characterization of the disputed settlement amount is dispositive for purposes of the applicability of the section 104(a)(2) exclusion. While not apparent from the nature of the two causes of action underlying petitioner's complaint, petitioner asserts that the disputed settlement amount was remitted to compensate him for various debilitating physical ailments (i.e., migraine headaches, stomachaches, and hand numbness) developed as a result of repeated, vehement verbal assaults by the District's Deputy Mayor Carolyn Graham (the putative Graham assault).

For the reasons delineated below, we do not endow the settlement's characterization of the disputed settlement amount with dispositive effect for purposes of the applicability of the section 104(a)(2) exclusion. In brief, the record is devoid of conclusive proof necessary to establish the requisite causal link between petitioner's averred maladies and the payment of the disputed settlement amount. This evidentiary insufficiency vitiates petitioner's contention that his illness was symptomatic of the species of ailments which are physical in nature within the scope of the section 104(a)(2) exclusion. Additionally, circumstantial evidence identified below indicates that the

settlement allocation was not the result of quid pro quo negotiations, but the product of unfettered, unilateral draftsmanship by petitioner, who formulated the provision solely for tax considerations.

Furthermore, the allocation of the disputed settlement amount does not satisfy the exclusion provided in the final sentence of section 104(a) concerning reimbursement of expenses for emotional distress-related medical treatment.  While the allocation of the disputed settlement amount identifies "out-of-pocket" expenses as a general, catchall compensatory item, in addition to the payments specified as "pursuant to section 104(a)(2)", the record contains no evidence reflecting any medical expenses petitioner may have incurred.

The bona fide nature of petitioner's averred symptoms was substantiated by the testimony of Arabella Teal (Teal), a former official in the District's Office of the Corporation Counsel and the District's principal representative in the settlement.  In stating that she could not recall requesting, receiving, or reviewing any medical documentation corroborating petitioner's illness, Teal remarked that the settlement discussions did include petitioner's "_emotional_ and _physical_ reaction to what had happened, because that's one of the things that [the District] had to evaluate in terms of deciding whether to settle the case." (Emphasis added.)  Teal stated that although she may have

neglected to confirm independently petitioner's physical condition, she did not doubt the veracity of his alleged health complications, because she regarded petitioner's representative as a prominent, trustworthy attorney and observed petitioner in what may be inferred to have been impaired physical health.

Teal's testimony excerpted above conflates petitioner's emotional suffering with the consequent physical reaction petitioner experienced as a result of that trauma. This illustrates the fact that the District conceived of petitioner's illness, although evidently grievous, as emanating from a physical manifestation of emotional distress encompassed within the limitation set forth in the penultimate sentence of section 104(a). Petitioner's divergent positions during the course of the proceedings regarding the cause of his injuries further indicate that his symptoms exhibit the hallmarks of a stress-induced condition. At trial, petitioner testified that negative publicity engendered by the Washington Post's investigative reports was a substantial contributing factor to the onset of his ailments:

> Q    You testified that you had a physical and emotional reaction to this whole process. Did this publicity have any effect on that, and if so, what?
>
> A    Yes. This was a significant component of the whole problem. * * * But there is my name in The Washington Post. You know, my name is at the city council hearing when they had the investigation. So yes, all this publicity had a huge impact on me.

By contrast, petitioner's brief attributes his symptoms exclusively to the putative Graham assault: "Ms. Graham's offensive conduct was the only predicate for the injuries * * * [petitioner] sustained, and, hence, the basis for the * * * [District's] decision to settle * * * [petitioner's] claim for physical pain and suffering."

Additionally, the allocation of the disputed amount was not apparently contested by the District during the course of the settlement negotiations with petitioner, and thus, the designation of the proceeds is not consonant with the nature of petitioner's underlying claims. Petitioner's complaint against the District contains no mention or allusion to the putative Graham assault. Petitioner's explanation for such conspicuous omission was that the complaint, which was never served on the District, was filed close to the expiration of the period of limitations for one or both of the causes of action, and was drafted in a sterile manner without reference to the putative Graham assault so as not to disrupt the progress of the settlement negotiations. Apart from petitioner's self-serving testimony, however, there is no evidence present in the record to establish that the putative Graham assault ever occurred.

Moreover, Teal testified at trial that the District's standard settlement agreements, utilized to resolve disputes of a similar nature to that involving petitioner, were relatively

brief and rudimentary in format, and did not specify the designation of the compensatory damage payments. According to Teal's recollection at trial, she perceived of the characterization of the disputed settlement amount as outside the scope of the controversy between the District and petitioner. Teal had been informed that the settlement allocation did not present any potential adverse ramifications for the District because, irrespective of the express settlement allocation, the District would defer to respondent's ultimate determination of the applicability of the section 104(a)(2) exclusion.

Petitioner asserts that the characterization of the disputed settlement amount was the result of quid pro quo negotiation because petitioner's municipal income tax liability, derived from his computation of adjusted gross income for Federal income tax purposes, would be correspondingly lower if the section 104(a)(2) exclusion applied. The record contains no evidence, however, that Teal was ever cognizant of or considered such diminishment to the District's municipal fisc.

Petitioner argues that the $31,750 designated as attorney's fees reimbursement is distinguishable from the remainder of the disputed settlement amount because the attorney's fees payment was remitted directly to petitioner's counsel. (Respondent concedes, though, that the attorney's fees compensation is deductible as a miscellaneous itemized deduction.) The Supreme

Court, in <u>Commissioner v. Banks</u>, 543 U.S. 426 (2005), found such a feature of a settlement payment to be inconsequential under the anticipatory assignment of income doctrine.  Therefore, the total disputed settlement amount of $135,000 must be included in petitioners' gross income.

3.  <u>Accuracy-Related Penalty</u>

Respondent determined an accuracy-related penalty for substantial understatement of income tax for the 2001 taxable year.  Section 6662 imposes a penalty of 20 percent on the portion of an underpayment of tax attributable to any "substantial understatement" of income tax.  An understatement (i.e., the excess of the amount of income tax required to be shown on the return over the tax actually shown on the return, less any rebate) is defined to be "substantial", if it exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000.  Sec. 6662(d)(1)(A).  A taxpayer is relieved of the accuracy-related penalty "if it is shown that there was a reasonable cause * * * and that the taxpayer acted in good faith".  Sec. 6664(c)(1).  The determination of whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all of the pertinent facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.  Generally, the most important factor is the extent of the taxpayer's efforts to assess the proper tax liability.  <u>Id.</u>

Petitioner contends that there was reasonable cause to rely on the settlement's explicit characterization of the disputed settlement amount, particularly since a timely Form 1099 was not provided to him.  However, in qualifying the disputed settlement amount as "non-taxable <u>to the fullest extent permitted by law</u>," the settlement contemplates that such allocation was not to be conceived of as a definitive pronouncement for tax purposes. (Emphasis added.)  Additionally, petitioner presented no evidence that he consulted with a professional tax adviser, or took any other independent action, to confirm the treatment of the disputed settlement amount under Federal tax law.  In light of our findings above concerning the nonadversarial nature of the settlement negotiations and the dubious origin of petitioner's ailments, the mere fact that petitioner did not receive the Form 1099 does not establish the applicability of the reasonable cause and good faith exception to the section 6662 penalty.

To the extent the parties' Rule 155 computation reflecting our findings above results in a recalculated tax satisfying section 6662(d)(1), we hold petitioners liable for the substantial understatement penalty.

4.  <u>Interest</u>

Petitioners challenge respondent's assessment of interest by invoking section 6404(g), which mandates (in the case of a timely filed return) the suspension of interest and penalties if

respondent does not provide notice to the taxpayer identifying the particular amount due and the basis for the liability within a specified 18-month period. The applicable 18-month period commences on the later of the due date of the return or the date the return was filed (without regard to extensions). Sec. 6404(g)(1)(A). The temporary suspension of interest runs from the day after the close of the 18-month period to the date which is 21 days following respondent's issuance of the explanatory notice. Sec. 6404(g)(3).

Respondent argues that jurisdiction to consider petitioner's interest claim is not available here pursuant to section 6404(b), which generally proscribes judicial review of claims for abatement of an assessment of interest on income, estate or gift tax. See Rev. Proc. 2005-38, 2005-28 I.R.B. 81.

It is respondent's further contention that jurisdiction over petitioner's claim concerning suspension of interest under section 6404(g) does not fall within the narrowly circumscribed exception to section 6404(b) provided in section 6404(h). Section 6404(h) authorizes jurisdiction over actions timely brought by a taxpayer (who meets the requirements of section 7430(c)(4)(A)(ii)) challenging a final determination of respondent concerning a claim for abatement of interest. Respondent's delegated scope of administrative review to consider interest abatement claims under section 6404(e) is confined to

those instances where respondent has made an interest assessment and such assessment is attributable in whole or in part to "any unreasonable error or delay" by respondent in performing a "ministerial or managerial act". Sec. 6404(e). Therefore, according to respondent, because the limited exception to section 6404(b) set forth in section 6404(h) is predicated on the issuance of a final determination concerning an interest abatement claim, interest suspension claims under section 6404(g) do not qualify because they are nondiscretionary. See Rev. Proc. 2005-38, supra.

The applicability of section 6404(b) to petitioner's interest suspension claim under section 6404(g) is not plainly demonstrated by the statutory construction, since the jurisdictional ban expressly governs abatement claims regarding assessments of tax, and an assessment has yet to occur in this case. However, irrespective of any perceived ambiguity inherent in section 6404(b), it is a long-standing principle that this Court generally lacks jurisdiction over issues involving interest. Melin v. Commissioner, 54 F.3d 432, 434 (7th Cir. 1995); Bourekis v. Commissioner, 110 T.C. 20, 24-25 (1998); 508 Clinton St. Corp. v. Commissioner, 89 T.C. 352, 354 (1987). Petitioners' arguments comprise the bare assertion to their entitlement to a suspension of interest under section 6404(g); petitioners adduce no authority to override the well-established

jurisdictional restrictions concerning interest matters. Therefore, jurisdiction is not available to consider petitioners' claims for suspension of interest pursuant to section 6404(g).

To reflect the foregoing and the concessions of the parties,

<u>Decision will be entered</u>

<u>under Rule 155</u>.