T.C. Summary Opinion 2006-51


UNITED STATES TAX COURT


JOHN BOTHE AND BARBARA BOTHE, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 6737-04S.            Filed April 12, 2006.


Stanley Pressment, for petitioners.

Michelle L. Maniscalco, for respondent.


CARLUZZO, Special Trial Judge: This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed. Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for 1999. Rule references are to the Tax Court Rules of Practice and Procedure. The decision to be

entered is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined a $25,056 deficiency in petitioners' 1999 Federal income tax. All adjustments that give rise to the deficiency have been agreed upon by the parties--their dispute involves an item reported on petitioners' 1999 Federal income tax return. John Bothe (petitioner) sued his former employer. Petitioners included the settlement proceeds from that lawsuit in the income reported on their 1999 return. They now take the position that it was a mistake to have done so. The issue for decision is whether those settlement proceeds are excludable from income pursuant to section 104(a)(2).

Background

Some of the facts have been stipulated and are so found. Petitioners are married to each other. They filed a timely joint 1999 Federal income tax return. At the time the petition was filed in this case, they resided in Corfu, New York.

Years ago, at age 19, petitioner began working at the New Jersey Sports and Exposition Authority, a.k.a. the Meadowlands racetrack (the Meadowlands). In 1979, he became an assistant race track announcer there. In 1990, petitioner became the head race track announcer. Starting as teenager and continuing

throughout his employment at the Meadowlands, petitioner suffered from migraine headaches, a condition known to his supervisors at the Meadowlands.

Over the years, petitioner's migraine headaches have been so severe that at times he required hospitalization. Petitioner's migraine headaches have caused panic attacks, as well as feelings of anxiety and depression. In addition to other health problems, petitioner's migraine headaches also caused problems with his voice.

Petitioner began betting on horse races as a teenager. During his employment at the Meadowlands, petitioner "was running to the window all the time in between races and making bets." After petitioner's gambling habit began to affect his work performance, he was told by Meadowlands management that he needed professional help to deal with his gambling problem. In 1991, petitioner began treatment for compulsive gambling. In 1992, petitioner joined Gamblers Anonymous.

In February 1998, petitioner lost his voice and had trouble with his eyesight. As a result, petitioner missed approximately a month and a half of work. The Meadowlands placed petitioner on paid temporary disability during this time and encouraged him to seek treatment. After undergoing treatment from several doctors, petitioner ultimately returned to work at the Meadowlands. The

Meadowlands made special accommodations for petitioner which included a custom binoculars stand and a larger television monitor. According to petitioner, the Meadowlands was "really being accommodating."

In December 1998, the Meadowlands asked petitioner to participate in a television program to report on various aspects of the Meadowlands horse races. In addition to his duties as a race track announcer, the Meadowlands requested that petitioner interview horse owners and trainers and handicap the horse races. Petitioner declined to participate in the television program because he believed it would jeopardize the ongoing treatment for his gambling addiction. Petitioner's doctors also advised him against any involvement in handicapping the horse races.

After petitioner declined to accept the additional job duties, the Meadowlands informed petitioner that his salary would be reduced. At that time, petitioner consulted an attorney. By letter dated December 31, 1998, petitioner's attorney notified the Meadowlands that petitioner's "addiction to gambling would be considered a handicap" and that it is "unlawful for employers to discriminate against persons on the basis of either a mental or physical handicap." Nevertheless, petitioner's salary was reduced as threatened.

On February 8, 1999, petitioner filed a complaint against the Meadowlands (the original complaint) in the Superior Court of New Jersey, Morris County (the lawsuit).  The original complaint advances two causes of action:  (1) Employment discrimination; and (2) intentional infliction of emotional distress.  Petitioner sought the following relief with respect to the employment discrimination:  (1) Reinstatement of his previously-in-effect employment conditions; (2) an injunction restraining the Meadowlands from further violations of the New Jersey Law Against Discrimination, N.J. Stat. Ann. 10:5-1 through 10:5-49 (West 2002); (3) damages for lost income and medical and fringe benefits; (4) compensation for injury to petitioner's professional stature and loss of public esteem; (5) compensation for petitioner's reduced prospects for future employment; (6) reasonable attorney's fees and litigation costs; and (7) punitive damages.  With respect to the count alleging intentional infliction of emotional distress, petitioner requested compensatory and punitive damages.  Petitioner remained employed by the Meadowlands after he filed his complaint.

During March 1999, petitioner suffered severe migraines and lost his voice.  Sometime during or shortly before March 1999, petitioner was placed on paid disability.  On March 23, 1999,

petitioner filed an amended complaint (the amended complaint) in the lawsuit and included two executives/employees of the Meadowlands as co-defendants.  The amended complaint advances three causes of action:  (1) Employment discrimination; (2) reprisal against petitioner by the Meadowlands for filing the lawsuit; and (3) violation of the New Jersey Conscientious Employee Protection Act, N.J. Stat. Ann. 34:19-1 through 34:19-8 (West 2000), by the two named executives/employees of the Meadowlands.

With respect to the first two causes of action, petitioner sought:  (1) Damages for lost earnings, including medical and fringe benefits; (2) damages for mental and emotional distress; (3) compensation for injury to petitioner's professional stature and loss of public esteem; (4) compensation for petitioner's reduced prospects of future employment; (5) reasonable attorney's fees and litigation costs; and (6) punitive damages.  Petitioner also sought compensatory and punitive damages for mental and emotional distress with respect to the third cause of action. According to petitioner, "the whole basis of the lawsuit" was that he "felt [he] was being discriminated because [he] was going to Gamblers Anonymous."

Ultimately, the lawsuit was settled.  James H. Lockwood (Mr. Lockwood), the Meadowlands' associate counsel and longtime

member of its legal department, participated in the settlement negotiations. In order to settle the lawsuit, the Meadowlands originally proposed that petitioner continue his employment with the Meadowlands as a per diem employee, the common status of other race track announcers at the Meadowlands, rather than a full-time salaried employee. The Meadowlands further proposed a 5-year contract that would essentially pay petitioner his current salary but provide no fringe benefits. In addition, petitioner would work about 40 fewer nights during the year and not be required to handicap the horse races. However, after petitioner made negative comments about the Meadowlands to the local media, the Meadowlands withdrew its proposal to allow petitioner to continue in its employ as a per diem employee. The Meadowlands resumed settlement negotiations with petitioner and his counsel with the sole desire to end petitioner's employment with the Meadowlands. During the settlement negotiations, petitioner made no request for compensation with respect to any physical injury or physical sickness.

On June 30, 1999, petitioner and the Meadowlands entered into a Settlement Agreement and General Release (the settlement agreement). Under the terms of the settlement agreement, petitioner generally released the Meadowlands from "all actions or claims * * * arising out of [petitioner's] employment with

[the Meadowlands]" in exchange for: (1) Payments totaling $225,000; and (2) his resignation as an employee of the Meadowlands. The settlement agreement also states that the Meadowlands and petitioner were entering into the settlement agreement to avoid the costs of litigation. In the settlement agreement, Meadowlands expressly denies any liability with respect to the claims alleged by petitioner.

The settlement agreement makes no reference to a physical injury or physical sickness resulting from the Meadowlands' actions, nor does the settlement agreement specifically carve out any portion of the settlement payment as a settlement on account of personal physical injury or physical sickness.

Petitioner officially terminated his employment with the Meadowlands on September 9, 1999. During 1999, petitioner received settlement proceeds of $199,073 from the Meadowlands (the settlement proceeds).

As previously noted, petitioners filed a timely joint 1999 Federal income tax return. The income reported on that return includes the settlement proceeds. On April 23, 2001, petitioners submitted a Form 1040X, Amended U.S. Individual Income Tax Return, for the 1999 taxable year. On the 1999 amended return petitioners excluded the settlement proceeds from their gross

income.[1]  The 1999 amended return was treated as a claim for refund and denied by respondent.

Discussion

Section 61(a) provides generally and broadly that gross income includes all income from whatever source derived. Exclusions from gross income must be specifically provided for and are narrowly construed.  Commissioner v. Schleier, 515 U.S. 323, 328 (1995).

Section 104(a)(2) excludes from gross income "the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness".  Section 104(a) further provides that "emotional distress shall not be treated as a physical injury or physical sickness" for purposes of section 104(a)(2). "[T]he term emotional distress includes symptoms (e.g., insomnia, headaches, stomach disorders) which may result from such emotional distress."  H. Conf. Rept. 104-737, at 301 n.56 (1996), 1996-3 C.B. 741, 1041.

Amounts are excludable from gross income under section 104(a)(2) only if:  (1) The underlying cause of action giving

---

[1]  On the 1999 amended return, petitioners exclude settlement proceeds of $199,702 from gross income and not $199,073.  The parties do not explain this difference.  However, this discrepancy is of no significance to our conclusion.

rise to the recovery is based on tort or tort-type rights, and (2) the damages are received on account of personal injuries or sickness. Commissioner v. Schleier, supra at 336-337.[2]

We start our analysis with a focus on whether the settlement proceeds were received on account of personal physical injuries or physical sickness. According to petitioner, they were; according to respondent, they were not. For the following reasons, we agree with respondent.

The term "damages received", as used in section 104(a)(2), means an amount received "through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." Sec. 1.104-1(c), Income Tax Regs. When damages are received pursuant to a settlement agreement, as here, the nature of the claim that was the actual basis for settlement, as opposed to the validity of that claim, controls whether the amounts are excludable under section 104(a)(2). United States v. Burke, 504 U.S. 229, 237 (1992); Bagley v. Commissioner, 105 T.C. 396, 406

---

[2] Subsequent to Commissioner v. Schleier, 515 U.S. 323 (1995), Congress amended sec. 104(a) to provide that amounts are excludable only if received "on account of personal physical injuries or physical sickness". Sec. 104(a)(2) (emphasis added); Small Business Job Protection Act of 1996, Pub. L. 104-188, sec. 1605, 110 Stat. 1838, effective for amounts received after Aug. 20, 1996. Although the amendment narrows the scope of sec. 104(a)(2), it does not otherwise affect the analysis set forth in Commissioner v. Schleier, supra. See Goode v. Commissioner, T.C. Memo. 2006-48; Prasil v. Commissioner, T.C. Memo. 2003-100.

(1995), affd. 121 F.3d 393 (8th Cir. 1997).  Determining the nature of the claim is a factual inquiry.[3]  Robinson v. Commissioner, 102 T.C. 116, 126 (1994), affd. in part, revd. in part, and remanded on another issue 70 F.3d 34 (5th Cir. 1995).  "[W]here an amount is paid in settlement of a case, the critical question is, in lieu of what was the settlement amount paid".  Bagley v. Commissioner, supra.  An important factor in making such determinations is the "intent of the payor" in making the payment.  Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965), affg. T.C. Memo. 1964-33.  If the payor's intent cannot be clearly discerned from the settlement agreement, the intent of the payor must be determined from all the facts and circumstances of the case, including the complaint filed and details surrounding the litigation.  Id.; Robinson v. Commissioner, supra at 127.

Under the terms of the settlement agreement, petitioner generally released the Meadowlands from "all actions or claims * * * arising out of * * *[petitioner's] employment with * * *[the Meadowlands]" in exchange for the settlement proceeds and his resignation as an employee of the Meadowlands.  The settlement agreement also states that the Meadowlands and

---

[3]  In their brief, petitioners take the position that sec. 7491(a) is applicable, and the burden of proof on this issue rests with respondent.  To the extent that it does, we find that respondent has met that burden.

petitioner were entering into the settlement agreement to avoid the costs of litigation and that the Meadowlands expressly denied any liability with respect to the claims alleged by petitioner.

The settlement agreement does not allocate any part of the settlement payment to a personal physical injury or physical sickness. Indeed, the settlement agreement makes no reference to a physical injury or physical sickness resulting from the Meadowlands' actions, nor does the settlement agreement specifically carve out any portion of the settlement payment as a settlement on account of personal physical injury or physical sickness. Although the settlement agreement provides that any payment petitioner was to receive pursuant to the settlement "is in the nature of compensation for any and all claims for alleged personal injuries (pain and suffering) claimed by * * * [petitioner]", Mr. Lockwood testified that the Meadowlands did not intend the settlement agreement to compensate petitioner for any physical injury or physical sickness.

The amended complaint filed in the lawsuit also fails to support petitioner's position here. The amended complaint states that "Specifically, the case involves discrimination against a party afflicted with that species of mental and psychological handicap commonly referred to as compulsive gambling." The complaint did not seek specific damages with respect to any physical injury or physical sickness. Furthermore, petitioner

testified that "the whole basis of the lawsuit" was that he "felt [he] was being discriminated because [he] was going to Gamblers Anonymous."

Finally, we note that Mr. Lockwood testified that the settlement payment was made to compensate petitioner for "lost time" and so that "Mr. Bothe [would] cease to be employed by [the Meadowlands] in any capacity".  Mr. Lockwood further testified that at no time during the settlement negotiations did petitioner allege that he had suffered any physical injury or physical sickness as a result of his employment by the Meadowlands, nor was it the Meadowlands' intention to compensate petitioner for any physical injury or physical sickness.

Mr. Lockwood's testimony on these points is corroborated by a statement in the settlement agreement that provides that, for income tax purposes, the amount to be paid to petitioner is "in the nature of compensation".

Based upon the foregoing, we conclude that petitioner did not receive the settlement payment on account of any personal physical injury or physical sickness as those terms are used in section 104(a)(2).  Accordingly, we need not address whether the underlying cause of action giving rise to the settlement was based upon tort or tort-type rights.  See Commissioner v. Schleier, 515 U.S. at 337.

We find that the settlement payment is not excludable from petitioners' 1999 income under the provisions of section 104(a)(2), and petitioners' claim for a refund is denied.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing, and to ensure that any agreements between the parties are properly taken into account,

<u>Petitioners' claim for refund is denied, and decision will be entered under Rule 155</u>.