T.C. Memo. 2009-38

UNITED STATES TAX COURT

RICHARD S. MOULTON, JR., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4552-06.                    Filed February 18, 2009.

Richard S. Moulton, Jr., pro se.

<u>Louise R. Forbes</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GALE, <u>Judge</u>:  Respondent determined a deficiency of $13,248
and a section 6662(a) accuracy-related penalty of $2,650 with
respect to petitioner's 2003 Federal income tax.

After a concession,[1] the issues for decision are:
(1) Whether $65,000 petitioner received in 2003 in connection
with a mediation agreement with his former employer is includible
in gross income; and (2) whether petitioner is liable for a
penalty under section 6662(a).

Unless otherwise noted, all section references are to the
Internal Revenue Code of 1986, as in effect for the year in
issue, and all Rule references are to the Tax Court Rules of
Practice and Procedure. All dollar amounts have been rounded to
the nearest dollar.

## FINDINGS OF FACT

Some of the facts have been stipulated and are incorporated
by this reference. At the time the petition was filed,
petitioner resided in New Hampshire.

Petitioner's Employment at the Morrell Corp.

Petitioner was an employee of the Morrell Corp., which
operated an amusement park called Story Land near North Conway,
New Hampshire, for approximately 30 years. In that capacity he
provided financial, administrative, and supervisory services,
first under the direction of Story Land's original owner and
founder and then under the direction of the founder's son, R.

---

[1]Petitioner has conceded that he failed to report $100 in
interest income for 2003.

Stoning Morrell, Jr. (Mr. Morrell, also referred to herein as Stoney Morrell).

Sometime in 1998 or 1999 petitioner began having disputes with certain employees of Story Land that eventually led to an estrangement between petitioner and Mr. Morrell.  As a result of his difficulties at work, petitioner became anxious and depressed.  In 1999 petitioner sought treatment from a psychologist, which extended to the fall of 2006.  The psychologist also sought to mediate the employment dispute on petitioner's behalf during 2000, to no avail.

Petitioner's Termination

In the fall of 2000 the Morrell Corp. fired petitioner. Petitioner strongly believed that his dismissal was unjustified.

In August 2002, still aggrieved over the circumstances of his termination, petitioner mailed a series of letters to Mr. Morrell and two Story Land employees which the recipients perceived as threatening violence.  Mr. Morrell and the two employees obtained temporary restraining orders against petitioner from a State court.  Local newspapers published detailed accounts concerning the allegedly threatening letters and the issuance of the restraining orders.  In petitioner's view the claims underlying the restraining orders were exaggerated and unfounded.  Petitioner believed that the adverse publicity,

coupled with his earlier dismissal, had ruined his reputation and his ability to find gainful employment in the area.

## Mediation

At a hearing on the status of the restraining orders the presiding judge suggested that Mr. Morrell and petitioner engage in professional mediation to resolve their differences. A day-long session with a mediator was conducted. The mediation session culminated in a mediation agreement; it has been stipulated that the purpose of the mediation agreement was "to resolve inter alia 'a painful and questionable termination' by the Morrell Corporation."

## Mediation Agreement

The agreement, executed on March 28, 2003, by petitioner and by Mr. Morrell on behalf of the Morrell Corp., provided in pertinent part:

> 1. Stoney Morrell's restraining order against * * * [petitioner] shall be dismissed. Marian Owen and Nancy Porath have each indicated that they will also dismiss their restraining orders as a result of this agreement.
>
> 2. Peter Malia [Morrell Corp.'s counsel] shall fax the agreed upon joint press release to the Conway Daily Sun on April 8, 2003. Neither party shall have any further comment to the press. However, both parties reserve the right to respond--in writing or verbally--to factual inaccuracies printed in the press, but agree to provide any written comments to Peter Malia, and to discuss the same with Peter Malia, and to allow Peter Malia time to discuss the same with the other party, prior to disseminating such a correction to the press.
>
> 3. In order to provide * * * [petitioner] with resources to enhance his employment opportunities, maintain his health

insurance, and/or enhance his ability to relocate, the Morrell Corporation will pay, by check, the sum of $65,000.00 (gross) subject to all applicable state and federal taxes.

4.   In exchange for the consideration set forth in #3 above, * * * [petitioner] agrees to release and forever discharge the Morrell Corporation, its owners, employees and agents, from any and all claims and causes of action that he had in the past or may now have in any way related to or arising out of his employment and its termination.  The Morrell Corporation agrees to release and forever discharge * * * [petitioner] from any claims that could arise out of the restraining order docketed as 02-CV-127.

Settlement Payment

The Morrell Corp. issued a check to petitioner for $60,028 on April 2, 2003, which petitioner endorsed and cashed shortly thereafter.  The Morrell Corp. took the position that the $65,000 it agreed to pay petitioner pursuant to the mediation agreement was taxable wages.  It subsequently issued petitioner a Form W-2, Wage and Tax Statement, for 2003, which listed wages of $65,000 and withholdings in the amounts of $4,030 and $943 for Social Security and Medicare, respectively.  The Form W-2 was addressed to petitioner's residence in North Conway, New Hampshire.

Through the time of the execution of the mediation agreement petitioner did not bring to the attention of Mr. Morrell or the mediator any medical problems he was experiencing or seek compensation for any medical expenses other than identifying his need to maintain health insurance coverage.

Subsequent Medical Care

In 2005 petitioner received medical treatment for sleeping problems that he attributed to depression.  In 2006 petitioner received medical treatment for elevated blood sugar levels, which petitioner attributed to "increased stress and some emotional issues over the past few years".

Petitioner's 2003 Return

Petitioner did not consult an accountant, lawyer, or other professional as to the proper treatment of the mediation proceeds on his 2003 Federal income tax return.  Petitioner did not report on the 2003 return any amount he received pursuant to the mediation agreement.

Notice of Deficiency

Respondent mailed petitioner a notice of deficiency in which he determined that petitioner failed to report $65,000 in wage income from the Morrell Corp. for 2003.  Respondent further determined that petitioner was liable for a $2,650 accuracy-related penalty under section 6662(a) for 2003.  Petitioner timely filed a petition for redetermination.

OPINION

Unreported Income

We first decide whether petitioner must include in his 2003 gross income the proceeds he received from the Morrell Corp. pursuant to the mediation agreement.  Petitioner contends that

the proceeds are excludable from gross income under section 104(a)(2) because they were compensation for injuries he suffered because of a wrongful termination and subsequent defamation by the Morrell Corp., including injury to his health. Respondent counters that petitioner is not entitled to exclude the proceeds under section 104(a)(2) because the Morrell Corp. did not make the payment on account of physical injuries but intended the payment to be treated as taxable wage income.

Respondent's determinations in the notice of deficiency are presumed correct, and petitioner bears the burden of proving that the determinations are in error. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).[2]

Generally, gross income includes all income from whatever source derived. See sec. 61(a); sec. 1.61-1(a), Income Tax Regs. While section 61(a) broadly applies to any accession to wealth, statutory exclusions from gross income are to be narrowly construed. See Commissioner v. Schleier, 515 U.S. 323, 328 (1995); United States v. Burke, 504 U.S. 229, 233 (1992); Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955). Petitioner must bring himself within the clear scope of any statutory exclusion. See Commissioner v. Schleier, supra at 336-337; United States v. Burke, supra at 233.

---

[2]Petitioner has not claimed or shown entitlement to a shift in the burden of proof under sec. 7491(a).

The statutory exclusion at issue appears in section 104(a)(2). Before it was amended by the Small Business Job Protection Act of 1996 (SBJPA), Pub. L. 104-188, sec. 1605(a), 110 Stat. 1838, section 104(a)(2) excluded from gross income amounts received on account of personal injuries or sickness. The reference to personal injuries or sickness included "nonphysical injuries to the individual, such as those affecting emotions, reputation, or character". United States v. Burke, supra at 235 n.6; see Robinson v. Commissioner, 102 T.C. 116, 125-126 (1994), affd. in part and revd. in part on another issue 70 F.3d 34 (5th Cir. 1995).

The SBJPA amended section 104(a)(2) to exclude from gross income "the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness". SBJPA sec. 1605(a) (emphasis added). The SBJPA also amended section 104(a) by adding the following flush language: "For purposes of paragraph (2), emotional distress shall not be treated as a physical injury or physical sickness. The preceding sentence shall not apply to an amount of damages not in excess of the amount paid for medical care * * * attributable to emotional distress." Id. sec. 1605(b). The foregoing amendments are effective generally for amounts received after August 20, 1996. See id. sec. 1605(d), 110 Stat. 1839.

Taken together, the SBJPA amendments eliminate the section 104(a)(2) exclusion for damages received on account of emotional distress (1) unless the emotional distress is attributable to a physical injury or physical sickness, or (2) except to the extent the damages do not exceed amounts paid for medical care attributable to emotional distress. The legislative history confirms this view.

> The House bill [followed in the conference bill] provides that the exclusion from gross income only applies to damages received on account of a personal physical injury or physical sickness. * * *
>
> The House bill also specifically provides that emotional distress is not considered a physical injury or physical sickness.[56] Thus, the exclusion from gross income does not apply to any damages received (other than for medical expenses as discussed below) based on a claim of employment discrimination or injury to reputation accompanied by a claim of emotional distress. Because all damages received on account of physical injury or physical sickness are excludable from gross income, the exclusion from gross income applies to any damages received based on a claim of emotional distress that is attributable to a physical injury or physical sickness. In addition, the exclusion from gross income specifically applies to the amount of damages received that is not in excess of the amount paid for medical care attributable to emotional distress.

_____

[56] It is intended that the term emotional distress includes symptoms (e.g., insomnia, headaches, stomach disorders) which may result from such emotional distress. [H. Conf. Rept. 104-737, at 301 (1996), 1996-3 C.B. 741, 1041.]

In interpreting section 104(a)(2) the Supreme Court has held that damages are excludable from gross income where a taxpayer proves (1) the underlying cause of action giving rise to the

recovery is based on tort or tort type rights and (2) the damages were received on account of personal injuries or sickness. See Commissioner v. Schleier, supra at 336-337. Lower courts have applied the foregoing two-pronged test from Schleier in interpreting section 104(a)(2) as amended in 1996. See Lindsey v. Commissioner, 422 F.3d 684, 688 (8th Cir. 2005), affg. T.C. Memo. 2004-113; Goode v. Commissioner, T.C. Memo. 2006-48; Shaltz v. Commissioner, T.C. Memo. 2003-173; Henderson v. Commissioner, T.C. Memo. 2003-168, affd. 104 Fed. Appx. 47 (9th Cir. 2004). Accordingly, the second prong of the Schleier test now requires a taxpayer to prove that the damages were received on account of personal physical injuries or physical sickness. See Lindsey v. Commissioner, supra; Goode v. Commissioner, supra; Shaltz v. Commissioner, supra; Henderson v. Commissioner, supra. Moreover, satisfaction of the second prong requires the taxpayer to show "a direct causal link" between the damages received and the physical injury or sickness sustained. Lindsey v. Commissioner, supra at 688; see also Banaitis v. Commissioner, 340 F.3d 1074, 1080 (9th Cir. 2003), affg. in part and revg. in part on another issue T.C. Memo. 2002-5, revd. sub nom. Commissioner v. Banks, 543 U.S. 426 (2005).

When determining the tax consequences of a payment made pursuant to a settlement agreement, it is the nature of the underlying claim, not its validity, that determines whether the

payment was received on account of a tort type claim for personal injuries.  See United States v. Burke, 504 U.S. at 237; Threlkeld v. Commissioner, 87 T.C. 1294, 1297 (1986), affd. 848 F.2d 81 (6th Cir. 1988); Glynn v. Commissioner, 76 T.C. 116, 119 (1981), affd. without published opinion 676 F.2d 682 (1st Cir. 1982).  In seeking the nature of the underlying claim, the court should consider "'In lieu of what were the damages awarded?'"  Robinson v. Commissioner, supra at 126 (quoting Raytheon Prod. Corp. v. Commissioner, 144 F.2d 110, 113 (1st Cir. 1944)) (emphasis added in Robinson), affg. 1 T.C. 952 (1943).

The determination of the nature of the underlying claim is a question of fact which is determined by considering the agreement in light of all the facts and circumstances, including the claim's characterization under applicable State law, the evidence marshaled, the arguments made by the parties, and the intent of the payor of the settlement.  See Threlkeld v. Commissioner, supra at 1306; Burditt v. Commissioner, T.C. Memo. 1999-117 (citing Robinson v. Commissioner, supra at 127); see also Gross v. Commissioner, T.C. Memo. 2000-342.  Paramount to this inquiry is the payor's intent in making the settlement payment.  See Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965), affg. T.C. Memo. 1964-33; Robinson v. Commissioner, 102 T.C. at 127.

If the settlement agreement expressly allocates the settlement between tort type personal injury damages and other damages, it will be respected for tax purposes to the extent that the parties entered into the agreement in an adversarial context at arm's length and in good faith.  See Robinson v. Commissioner, supra at 127.  Absent an express allocation in the settlement agreement, the most important consideration is the payor's intent in making the payment.  See Delaney v. Commissioner, 99 F.3d 20, 24 (1st Cir. 1996), affg. T.C. Memo. 1995-378; Knuckles v. Commissioner, supra at 613; Metzger v. Commissioner, 88 T.C. 834, 847-848 (1987), affd. without published opinion 845 F.2d 1013 (3d Cir. 1988); Gerard v. Commissioner, T.C. Memo. 2003-320; Gross v. Commissioner, supra.

A.   Were the Underlying Claims Giving Rise to the Proceeds Based on Tort or Tort Type Rights?

We find petitioner meets the first prong of the Schleier test, having had tort type claims against the Morrell Corp. for wrongful termination and defamation at the time the mediation agreement was executed.[3]

---

[3]The State of New Hampshire recognizes tort claims based on both wrongful termination, see Hutton v. Essex Group, Inc., 885 F. Supp. 331, 332 (D.N.H. 1994); Porter v. City of Manchester, 849 A.2d 103, 114 (N.H. 2004); Cloutier v. Great Atl. & Pac. Tea Co., 436 A.2d 1140, 1143 (N.H. 1981), and defamation, see Moss v. Camp Pemigewassett, Inc., 312 F.3d 503, 507 (1st Cir. 2002); Indep. Mech. Contractors, Inc. v. Gordon T. Burke & Sons, Inc., 635 A.2d 487, 492 (N.H. 1993).

The stipulations establish that the mediation agreement was entered into to resolve a "questionable termination" by the Morrell Corp. Petitioner testified credibly as to his view that his abrupt termination after 30 years' employment was unjustified and that his termination and the unfavorable newspaper coverage of the restraining orders destroyed his reputation in the community. Finally, the mediation agreement was conditioned upon petitioner's release of all claims against the Morrell Corp. (and its owners, employees and agents) "in any way related to or arising out of his employment and its termination."

On these facts, we are satisfied that petitioner had underlying claims based on tort or tort type rights. He therefore satisfies the first prong of the <u>Schleier</u> test.

B. <u>Were the Proceeds Received on Account of Personal Physical Injuries or Physical Sickness?</u>

The second prong of the <u>Schleier</u> test requires that the amounts to be excluded from income be received on account of personal physical injuries or physical sickness. As noted, to satisfy this prong petitioner must show a direct causal link between the damages received and a personal physical injury or sickness sustained.

While the mediation agreement does not contain express allocations to specific claimed injuries, we find that when read in context the agreement is directed at wrongful termination and, to a lesser extent, possible injury to petitioner's reputation.

Although the agreement does not acknowledge that petitioner was the victim of a wrongful termination, it has been stipulated for purposes of this case that the termination was "questionable". The agreement states that the Morrell Corp. will pay petitioner $65,000 "[i]n order to provide * * * [petitioner] with resources to enhance his employment opportunities, maintain his health insurance, and/or enhance his ability to relocate". These purposes suggest a payment in the nature of severance. The agreement also expressly provides that in exchange for the $65,000, petitioner "agrees to release and forever discharge the Morrell Corporation, its owners, employees and agents, from any and all claims and causes of action that he had in the past or may now have in any way related to or arising out of his employment and its termination." This language demonstrates a clear nexus between petitioner's possible claim of wrongful termination and the amounts he received pursuant to the agreement. Finally, the agreement provides that the $65,000 gross payment is "subject to all applicable state and federal taxes", and within 1 week of the agreement's execution petitioner accepted a check for $60,028 in satisfaction of the Morrell Corp.'s obligation.

Taken together, we believe these provisions and the surrounding circumstances demonstrate that petitioner and the Morrell Corp. agreed to settle petitioner's wrongful termination

claim by the Morrell Corp.'s providing $65,000 to petitioner in the nature of a severance payment--that is, as taxable wages.

We conclude that the mediation agreement also had a secondary purpose of addressing potential injury to petitioner's reputation. Petitioner believed that his abrupt termination as well as the publicity surrounding the restraining orders had damaged his reputation. The mediation agreement addressed this concern, albeit implicitly, by mandating carefully choreographed communications with the media concerning the dispute between petitioner and the Morrell Corp. and its resolution and by the requirement that the restraining orders be dismissed.

On the basis of the preponderance of the evidence, we believe that petitioner received the $65,000 proceeds on account of a wrongful termination. Petitioner has not demonstrated any direct causal link between the $65,000 proceeds and a personal physical injury or physical sickness. To the contrary, although petitioner testified that he became depressed and suffered various other maladies as a result of his termination and related events, he conceded that he had not brought any medical problems to the attention of Mr. Morrell or the mediator, or sought compensation for any medical expenses in connection with the mediation (other than identifying his need to maintain his health insurance). Thus, as payor the Morrell Corp. was unaware of any medical claims and could not have intended to compensate for

them.  See <u>Sodoma v. Commissioner</u>, T.C. Memo. 1996-275, affd. without published opinion 139 F.3d 899 (5th Cir. 1998); <u>Foster v. Commissioner</u>, T.C. Memo. 1996-26, affd. without published opinion 122 F.3d 1071 (9th Cir. 1997); <u>Galligan v. Commissioner</u>, T.C. Memo. 1993-605.  The claims of wrongful termination and defamation that we believe prompted the consideration petitioner received under the mediation agreement were not physical injuries to petitioner or physical sickness.  To the extent petitioner may have suffered depression, sleep disorders, or elevated blood sugar levels that he attributed to heightened stress from his job termination and its aftermath, those conditions fall within the category of "emotional distress" that "shall not be treated as a physical injury or physical sickness" for purposes of the exclusion provided in section 104(a)(2).  Sec. 104(a) (flush language); see also H. Conf. Rept. 104-737, <u>supra</u> at 301 n.56, 1996-3 C.B. at 1041 ("It is intended that the term emotional distress includes symptoms (e.g., insomnia, headaches, stomach disorders) which may result from such emotional distress.").

Finally, while there is evidence that petitioner was treated by a psychologist before, during, and after the year in issue and that he received other medical care in 2005 and 2006, there is no substantiation in the record of any actual expenditures for medical care.  Thus, petitioner has not shown eligibility for

- 17 -

exclusion of any amount under the last sentence of the flush language of section 104(a).

C.    Conclusion

We conclude on the basis of the preponderance of the evidence that no part of the $65,000 proceeds petitioner received in exchange for a release of any claims he might have had against the Morrell Corp. was received by him on account of personal physical injuries or physical sickness.  We accordingly sustain respondent's determination that petitioner had unreported taxable wage income of $65,000 in 2003.

Accuracy-Related Penalty

We now consider whether petitioner is liable for the accuracy-related penalty under section 6662(a).  Respondent bears the burden of production with respect to petitioner's liability for the section 6662(a) penalty.  See sec. 7491(c).  In order to meet that burden, respondent must offer sufficient evidence to indicate that it is appropriate to impose the accuracy-related penalty.  See Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  Once respondent meets his burden of production, petitioner bears the burden of proving error in the determination, including establishing reasonable cause or other exculpatory factors.  Id. at 446-447.

Section 6662(a) and (b)(2) imposes a penalty of 20 percent on the portion of an underpayment of tax attributable to a

substantial understatement of income tax. Pursuant to section 6662(d)(2)(A), the term "understatement" is defined as the amount of tax required to be shown on the return for the taxable year over the amount of tax shown on the return for the taxable year. A substantial understatement arises where the understatement exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable year or $5,000. Sec. 6662(d)(1)(A).

The section 6662(a) penalty is not imposed on any portion of an underpayment as to which the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1); Higbee v. Commissioner, supra at 448-449. Whether the taxpayer acted with reasonable cause and in good faith depends upon all the pertinent facts and circumstances, including the taxpayer's reasonable reliance on a professional tax adviser, the taxpayer's efforts to assess his or her proper tax liability, and the knowledge and experience of the taxpayer. Lindsey v. Commissioner, T.C. Memo. 2004-113; sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioner's failure to include in his 2003 gross income the $65,000 gross payment and the $100 in interest income resulted in a $13,248 understatement of income tax for 2003. Because the understatement exceeds the greater of 10 percent of the tax required to be reported on petitioner's tax return or $5,000,

respondent has satisfied his burden of production under section 7491(c).

Petitioner claims that he is not subject to the accuracy-related penalty because he concluded reasonably and in good faith that the proceeds were excludable from gross income under section 104(a)(2) as payments for personal injuries. However, petitioner has not shown that he undertook any investigation of a basis for excluding the $65,000 proceeds when he filed his return. In petitioner's apparent circumstances this was a significant sum of money that warranted greater diligence.

Other factors gave petitioner reasonable notice that his treatment of the proceeds as nontaxable was subject to doubt. First, the mediation agreement petitioner signed stated that the payment would be "subject to all applicable state and federal taxes." Second, the Morrell Corp. mailed a Form W-2 characterizing the $65,000 gross payment as wages to petitioner's residence, and petitioner has offered no evidence to support an inference that he did not receive it. Nonetheless, petitioner failed to seek any guidance as to the correct treatment on his 2003 return of this very sizable amount until he received the notice of deficiency.

Considering all the facts and circumstances, we conclude that petitioner has not shown reasonable cause with respect to any portion of the underpayment. We shall therefore sustain

respondent's determination of the accuracy-related penalty under section 6662(a).

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.